[Civil No. 1397.   Filed March 9, 1915.]

[146 Pac. 759.]

## J. W. WEATHERFORD, Appellant, v. S. M. HANGER, Appellee.

1. EXCHANGE OF PROPERTY—CONTRACT—CONSTRUCTION—QUESTION FOR JURY.—In an action for a breach of a contract by which defendant exchanged stock in a corporation for plaintiff's land, it was the duty of the court to declare what would be the legal effect of the contract pleaded if the jury determined that such contract was entered into.

2. TRIAL—INSTRUCTIONS—NECESSITY FOR REQUEST.—Under Civil Code of 1913, paragraph 516, requiring the judge to mark requested instructions "Given" or "Refused," and paragraph 601, providing that the giving, refusing or modifying of instructions and every part of the charge given and all rulings shall be deemed excepted to at the time without formal exception and subject to revision, a party complaining of the brevity of an instruction, but making no request for a further instruction to be made a part of the record, presented nothing of record for review.

3. APPEAL AND ERROR—ASSIGNMENT OF ERROR—SUFFICIENCY OF EVIDENCE.—An assignment that "the court erred in overruling defendant's motion for a new trial because the verdict of the jury is contrary to the law and evidence, and is not supported by the evi-

dence," could be considered only in so far as it might be construed as an assignment to the effect that the evidence was insufficient to sustain the verdict.

4. EXCHANGE OF PROPERTY—TRANSFER OF CORPORATE STOCK—FRAUD— GUARANTY—SUFFICIENCY OF EVIDENCE.—In an action for damages for breach of a contract by which defendant exchanged corporate stock for plaintiff's land, evidence *held* to sustain plaintiff's contention of guaranty as to the value of the stock.

[As to contracts of guaranty, see note in 105 Am. St. Rep. 502.]

5. EXCHANGE OF PROPERTY—TRANSFER OF STOCK—FRAUD—DAMAGES— QUESTIONS FOR JURY.—Where, in an action for breach of contract by which defendant exchanged corporate stock valued at 50 cents a share for plaintiff's land, there was evidence that while plaintiff held the stock it sold for various prices from 15 cents a share to 60 cents a share, all sales being by special contract, and no market value existing, it was for the jury to determine the amount of damage suffered by the plaintiff who sold at 15 cents.

6. JUDGMENT—DESIGNATION OF AMOUNT—INTEREST.—In an action for breach of contract, a judgment for plaintiff in a certain sum, with legal interest thereon from the date of the contract, was erroneous as to the interest; as the verdict of the jury must be regarded as determining the actual damages to the time of its rendition, including interest recoverable.

APPEAL from a judgment of the Superior Court of the County of Maricopa. J. C. Phillips, Judge. Modified and affirmed.

STATEMENT OF FACTS BY THE COURT.

The appellee was the owner of a tract of land, and the appellant owned 7,000 shares of stock of the Overland Telephone and Telegraph Company. The appellee exchanged the land for the said stock and one bond of the said corporation. The value placed upon the land was $4,250. The value placed upon the bond was $750, and negotiations as to the value to be placed upon the stock resulted in a valuation of 50 cents per share being fixed for the purposes of the exchange, and the appellee conveyed the land to the appellant, and appellant transferred the stock and bond to the appellee. The exchange of the property took place on March 20, 1911.

The action was commenced by the appellee, alleging as the grounds for recovery:

"On or about said 20th day of March, 1911, the defendant approached the plaintiff and solicited the plaintiff to pur-

chase said 7,000 shares of the capital stock of the said company then belonging to the defendant, and then and there stated and represented to this plaintiff that said stock was then and there worth in actual value the sum of 50 cents per share; that there would be a corporate election of said Overland Telephone and Telegraph Company about 40 days thereafter, and that immediately upon and after the said corporate election, the said stock aforesaid would be worth, and would have an actual market value of, 65 cents per share, and, as an inducement and consideration for the plaintiff purchasing of the defendant the said 7,000 shares of stock aforesaid, that he (the defendant) would then and there agree with the plaintiff that, if the said plaintiff would purchase of the said defendant the said 7,000 shares of stock aforesaid, he (the defendant) would and did guarantee to the plaintiff that the said stock would be worth 65 cents per share immediately upon and after the said election so to be held as aforesaid, and would and did further guarantee that immediately upon, from, and after the said election so to be held plaintiff would be able at all times to sell and realize upon said stock at the rate of 65 cents per share, and that the plaintiff could and would receive therefrom the sum of 65 cents per share; . . . that, in consideration of said promise and agreement of guaranty on the part of the defendant, and relying upon the same, and being induced thereby, this plaintiff did purchase of the said defendant the said 7,000 shares of stock," and paid therefor $3,500.00 in property.

The plaintiff alleges that the stock was disposed of by him in August, 1912, for 15 cents a share, and he received no more for the stock in any manner. He prays judgment for $3,500, and interest. The defendant, answering, "denies generally and specifically each and every allegation in plaintiff's complaint contained and the whole thereof."

A trial was had before a jury. Among other things, the court charged the jury as follows:

"If you believe that the defendant guaranteed to the plaintiff that this stock would, as the plaintiff claims, increase in value the amount he claims and so on, you can find for the plaintiff in such an amount as you think is proper and right. If, however, you find that the evidence does not preponderate in favor of the plaintiff, if the plaintiff does not have the

greater weight of the evidence as to the question of guaranty, it would be your duty to find in favor of the defendant.''

The jury returned a verdict for the plaintiff in the sum of $1,353.80, and judgment was rendered accordingly. Defendant moved for a new trial, which motion was overruled, and the defendant appeals from the judgment and from the order refusing a new trial.

As grounds for reversal the appellant assigns error as follows:

''No. 1. The court erred in his instructions to the jury in failing to instruct them that, before the plaintiff could recover from the defendant, the plaintiff must prove by the preponderance of the evidence that the defendant had given an express warranty or guaranty that the stock sold to the plaintiff by the defendant was of the value of 50 cents per share, and would increase to the value of 65 cents per share.

''No. 2. The court erred in overruling defendant's motion for a new trial, because the verdict of the jury is contrary to the law and evidence, and is not supported by the evidence.''

Messrs. Bullard & Carpenter, for Appellant.

Messrs. Alexander & Christy, for Appellee.

CUNNINGHAM, J.—It is the duty of the trial court to declare the law applicable to the state of facts disclosed by the evidence upon the trial. The jury must decide the facts and render a verdict in accordance with the law as declared by the court applicable to the facts found. In this case it became the duty of the court to instruct the jury that, before they could find for plaintiff, they must be satisfied from a preponderance of the evidence that plaintiff and defendant entered into a contract on the terms and conditions substantially as set forth in the complaint. This was declaring the elementary rule of law requiring the proof to correspond to the allegations of the complaint and the rule of *quantum* of proof to sustain the plaintiff's burden justifying a verdict.

It was likewise the duty of the court to declare the legal effect of the contract, if the jury determined the contract pleaded was entered into, and to instruct as to the liability imposed by the contract. The charge, as given, is to the effect

that, if the jury believe from a preponderance of the evidence that the parties entered into the contract, then they must find for the plaintiff such damages as they determine he has suffered; and, on the other hand, if they find that the weight of evidence of the making of the contract does not preponderate in favor of the plaintiff, they must find for the defendant. In fairness to the parties, the trial court should make clear to the jury the issues on trial and the rules of law applicable to the evidence, controlling their deliberations.

The instruction, as given, may be criticised as approaching the limits in brevity, but it cannot be said that the charge was erroneous. Appellant does not complain of the charge as erroneous, but he does complain of its brevity; that is, of a failure or omission to instruct further. Appellant does not claim that he requested in writing further instructions, and that such request was refused. Such procedure is allowed by paragraph 516, Civil Code of 1913. Refusal by the court to give an instruction requested in writing is an adverse ruling, and becomes a part of the record of the case, and is deemed excepted to at the time, without formal exceptions, and is subject to revision by this court for error. Paragraph 601, Civ. Code 1913. Matters occurring at the trial not formally excepted to or deemed excepted to, at the time, are no part of the record, unless made such, nor subjects of review as a general rule. Certainly an instruction believed by counsel to be beneficial to a party's cause, but not requested in writing, not made a part of the record of the case, and not excepted to formally or otherwise, brought to the attention of the trial court, could not be complained of for the first time on appeal. The matter complained of is no part of the record before this court, and the assignment of a failure to instruct further upon a particular question presents no record for consideration, nor question for review.

The second assignment can be considered only in so far as it may be construed as an assignment to the effect that the evidence is insufficient to sustain the verdict of the jury. For a decision of this case we will concede that the assignment has that effect. The evidence of the plaintiff is to the following effect:

He owned ten acres of land. He fixed a price for which he was willing to sell. Defendant was introduced to him as a

possible buyer. The matter was talked over, and defendant wanted plaintiff to take stock of the Overland Telephone and Telegraph Company in exchange for the land. Plaintiff required time to consider the matter of taking the stock. The defendant offered testimony that plaintiff said, "I am not in need of the money, if I can get something just as good as money," and that he said he would investigate the matter, and later let defendant know what he would do about accepting the stock. Plaintiff did not deny this statement attributed to him. Plaintiff testified that after a day or two he and defendant had a further talk about the matter at plaintiff's house, where plaintiff said: "I will take bonds for this property, but I won't want your stock." Defendant replied: "I haven't got but one bond; I will let you have that." After an extended conversation, defendant returned to the subject, and said: "This stock, Mr. Hanger, is worth 50 cents a share, and I will guarantee after the election is over that it will be worth 65 cents a share." Plaintiff said: "If you will let me have the bond and the stock to the amount of $4,200, why, I guess we will call it a trade." Plaintiff testifies: "So we made the trade, and it was made on his guarantee that the stock was now worth 50 cents, and it would be worth 65 cents after the election." On further examination plaintiff was asked: "What was the inducement to you to make this trade, Mr. Hanger?" He answered: "It was simply I wanted to get rid of this property, and I wanted to get rid of it at what it was worth, . . . and he being one of the directors, and representing this company to be as he said it was, and then the talk that he had relative to the value of the stock at that time, and then the guaranty he put upon it that it would be worth 65 cents soon after the election—that was the inducement that caused me to take the stock."

The testimony of plaintiff's wife in a measure corroborated plaintiff's testimony of the conversation had at plaintiff's house.

Defendant's version of the transaction is as follows:

"I told Mr. Hanger I didn't have enough money to buy that place, and if he cared to trade the place for Overland Telephone stock that we could probably come to terms. . . . He said he would consider it. He said: 'I will look into it, examine into the stock, and try to post myself on it; and if I

consider the stock a good value—I want to sell the land.'
. . . Mr. Hanger was to meet me—No; it wasn't the next
day. . . . It may have been the third day. . . . Mrs. Weath-
erford and I went out to Mr. Hanger's residence, and we spent
. . . some time . . . talking over the proposition, and came
to an understanding with Mr. Hanger and Mrs. Hanger.
. . . '' The understanding arrived at was that ''he [appel-
lee] was to trade me [appellant] the place for $4,250; $425
an acre was the price. He was trading me the place for
$4,250 worth of Overland Telephone stock at 50 cents a share,
that was the agreement. There wasn't a word ever said about
a guaranty or anything respecting it in any manner, shape or
form.'' Mr. Hanger was to come downtown and close the
deal the next day, but did not keep his appointment. ''Later
in the day I [appellant] went out and we talked the matter
over, and he asked me if I had any bonds of the Overland
Telephone Company, and I told him I had one. He asked me
if I would as leave put in that bond, and I told him I would
put the bond in to him at $750; then in signing over the stock
to him that would leave $3,500. In signing over the stock
to him I was short 231 shares of stock, unless I would go to
the office and break another 5,000-share certificate. . . . I said
to him: 'Mr. Hanger, rather than put myself to the bother,
if it is agreeable to you I will pay you the $115.50 in cash,
but if you say I shall go over to the office and break up the
certificate, I will do that.' I never did turn Mr. Hanger over
the 7,000 shares of telephone stock. . . . I turned him over
7,000 shares, less 231 shares, and I paid him $115.50 in cash
according to a mutual agreement between us. . . . There was
never anything said about the guaranty for the stock. . . .
There was no guaranty or warranty spoken of about the stock
at any time. I believe I told Mr. Hanger I believed the stock
was good stock; that it would increase in value. I did believe
it . . . to the amount of a good many thousand shares that I
bought myself.''

The defendant's testimony was intended as a contradiction
of plaintiff's evidence upon the question of a promise to plain-
tiff that plaintiff would receive 65 cents per share for the
stock. Defendant denied that anything was said about a
guaranty or warranty, but, in effect, his evidence upon all
other facts testified to by plaintiff closely agrees with that of

the plaintiff. As to what defendant intended to mean by a guaranty or a warranty in relation to a contract is a matter of conjecture. Whether defendant intended to say that he did not, as an inducement to plaintiff to accept the stock, represent that the stock was worth 50 cents per share, and would be worth 65 cents a share after the election, does not appear. The statement that defendant did not guarantee nor warrant the stock is a statement of a conclusion of the witness' understanding of the legal effect of what was said and done by the parties at the time of closing the agreement. Defendant admits having said that the stock was then worth 50 cents per share, and that he believed it would increase in value. From such admission, in the light of plaintiff's positive evidence upon that subject and the further fact that the parties intended that the property exchanged should be equal in value, the inference may be readily drawn that defendant, in fact, promised plaintiff that, if plaintiff would accept the stock with the bond as of equal value with the land in the event the stock should not prove of the value fixed, defendant would make good to plaintiff such deficiency. Such is the effect of the contract set forth in the complaint. The evidence is therefore in support of the pleadings.

The liability assumed by the defendant under the contract was to pay to the plaintiff such damages as plaintiff should suffer by reason of the failure of the stock to become of a value equal to $3,500, the value fixed by the parties as a basis of the exchange of property. It is conceded that plaintiff disposed of the stock under circumstances existing at the time to the best advantage, at a price of 15 cents per share. The evidence is that during the time plaintiff held the stock the stock sold for all kinds of prices, ranging from 15 cents a share to 60 cents a share, but that all the sales made were made by special contract, and no market for the stock existed. Under this evidence it was for the jury to determine the amount of damage suffered by the plaintiff. The jury evidently determined that defendant delivered to plaintiff 6,769 shares of stock under the contract as testified by the defendant, and that while plaintiff held the stock he suffered a loss of 20 cents a share—a total loss or damage of $1,353.80. The evidence is sufficient to sustain the verdict. The court committed no error in refusing a new trial.

Upon the face of the judgment it appears that plaintiff is adjudged to have and recover of and from the defendant the sum of $1,353.80, "with legal interest thereon from the 20th day of March, 1911." The verdict of the jury must necessarily be regarded as determining the actual damages up to the time of its rendition, and this would include all the interest recoverable as a part of the damages.

The judgment is modified so as to bear interest at the legal rate from its date, and, as modified, stands affirmed.

ROSS, C. J., and FRANKLIN, J., concur.

Application for rehearing denied.