### DETROIT UNITED RY. v. NICHOLS.

(Circuit Court of Appeals, Sixth Circuit. November 20, 1908.)

No. 1,815.

1. STREET RAILROADS (§ 74*) — REGULATION AND OPERATION — INJURY TO PERSONS ON TRACK—ORDINANCE REGULATING SPEED.

An ordinance requiring street cars to slacken speed to a rate not exceeding three miles per hour when approaching any other car, "when such car has stopped or is about to stop to permit passengers to get on or off," does not apply in an action to recover for an injury to a passenger by be-

ing struck by a car after alighting from another when the latter had started and moved a distance of nearly a block before the accident occurred.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 154; Dec. Dig. § 74.*]

**2. TRIAL (§ 420*)—WAIVER OF ERROR—RULING ON DEMURRER TO EVIDENCE—INTRODUCTION OF EVIDENCE.**

In the federal courts the introduction of evidence by a defendant after a motion for a peremptory charge at the conclusion of plaintiff's evidence has been overruled is a waiver of such motion, and no error can be assigned to the ruling thereon; but the motion may be renewed at the close of all the evidence, in which case the whole of the evidence is to be considered.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

**3. COURTS (§ 356*)—FEDERAL COURTS—PROCEDURE—SCOPE OF CONFORMITY STATUTE.**

In the federal courts everything after judgment, looking to a review by an appellate court, is regulated solely by the acts of Congress, the practice at common law, and the rules and decisions of such courts, and is not within the scope of the conformity act (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]).

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 937; Dec. Dig. § 356.*]

**4. STREET RAILROADS (§ 117*) — INJURY TO PERSON ON TRACKS—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.**

A person struck and injured by a street car while crossing the tracks at a public crossing at a street corner in a large city is not as a matter of law chargeable with such contributory negligence as to require a peremptory charge for defendant in an action against the street railroad company for the injury because before crossing she did not observe the tracks for an approaching car beyond a distance of 50 feet, the standard of care required in such case being different from that in cases of persons crossing the tracks of a commercial steam railway.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 255–257; Dec. Dig. § 117.*]

**5. STREET RAILROADS (§ 118*)—INJURY TO PERSON ON TRACK—ACTION—INSTRUCTIONS.**

An instruction, in an action to recover for an injury to plaintiff by being struck by a street car, that if, before going upon the track, she "looked a distance she thought sufficient" and saw no car, she was not guilty of contributory negligence, was error.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 269; Dec. Dig. § 118.*]

**6. APPEAL AND ERROR (§ 763*)—BRIEFS—RIGHT TO FILE ADDITIONAL BRIEFS.**

There is no authority under the rules or practice of the Circuit Court of Appeals for filing additional briefs at or after the hearing without special leave of court granted on sufficient ground shown.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3098; Dec. Dig. § 763.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

T. T. Leete, for plaintiff in error.

C. I. Webster and W. N. Choate, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LURTON, Circuit Judge. This was an action in tort. There was judgment for the plaintiff. The defendant in error, plaintiff below, while crossing a street car track at a street crossing, was knocked down and run over by an electric street car operated by the plaintiff in error, sustaining serious injuries. The defendant in error, hereafter referred to as Miss Nichols, accompanied by a friend, Mr. Cleveland, alighted from an east-bound street car at the corner of Kercheval and Field avenues, in Detroit, Mich. Kercheval avenue is an east and west street, 60 feet from curb to curb, and straight. Field avenue crosses it at right angles. The railway company has two parallel tracks on Kercheval; the northerly one being used by cars going west, and the southerly one by cars going east. The two passengers alighted from the south side of the car by a side door about midway from the ends of the car. The petition alleges that they stood upon the street and made no attempt to cross to the north side until after the car from which she had alighted had moved past them. The destination of Miss Nichols was the home of her mother on the northeast corner of Kercheval and Field avenues. The rear end of the car had stopped a few feet east of the east side of Field avenue. The entrance to her mother's home was on Field avenue. Hence a direct line from where she stood, until her car had gone on, to the entrance of her home, was a diagonal one. The distance was approximately 32 feet to the north rail of the west-bound track she must pass. Just as she was about to step over this northerly rail, she says she was struck by a west-bound car moving at great speed. She had, therefore, upon her own evidence and that of her witnesses, walked in a slow and usual way 32 feet before being struck.

First, as to the question of the negligence of the railway company. This was averred to consist in excessive speed in violation of a city ordinance, negligence of the motorman in failing to keep an outlook, and failure to ring the gong or give any warning of approach. There were two city ordinances in evidence regulating the speed of street cars. By these the street railway companies were prohibited from running over the lines of any street railway company in the city of Detroit at "a greater rate of speed than an average of ten miles per hour for the whole length of any route" within the "three mile circle," nor at a greater rate of speed than "an average of fifteen miles per hour for the whole length of any route lying without such circle." This accident occurred within the three-mile circle referred to. Another provision of the ordinance made it the duty of "motormen operating street cars" to cause such cars to slacken their speed to a rate not exceeding three miles per hour when approaching any other car going either in the same or an opposite direction *when such car has stopped, or is about to stop, to permit passengers to get on or off.*" We italicize this because the application of the ordinance to the facts of this case is to be considered later.

In respect to a violation of the ordinances, the court charged the jury as follows:

"By the ordinance of the city of Detroit referred to, all street railway companies in the city who shall have charge, supervision, or control of the running or the operating of cars on any street railway in the city of Detroit

shall be and are hereby required, in operating said cars to slacken their speed to a rate not exceeding three miles an hour when approaching any other car going in an opposite direction when such car has stopped or is about to stop to permit passengers to get on or off. By another ordinance, an earlier one, it is provided that cars shall not be run within the three-mile circle in the city of Detroit at a greater rate of speed than an average rate of ten miles an hour. Therefore, the question of speed enters into this case as one of the alleged acts of negligence of the company, namely, that the car was running at a too high rate of speed, and that, in part at least, was the cause of this injury, and in connection with other acts of negligence charged in the declaration to which I have already referred. It is for the jury to determine whether that ordinance was violated, and whether its violation was the cause in whole or in part of this accident to the plaintiff."

Bearing upon the meaning, purpose, and applicability of the ordinance prohibiting a greater speed than three miles per hour "when approaching any other car going either in the same or the opposite direction, when such car has stopped, or is about to stop, to permit passengers to get on or off," the plaintiff in error preferred a request for a special charge in these words:

"If you believe the evidence of the plaintiff and witness Cleveland that the east-bound car had started and proceeded easterly from its stop near Field avenue when the west-bound car passed it, then I charge you that the city ordinance fixing the rate of speed for cars passing cars stopped or about to stop has no application in this case."

This was refused, and an exception reserved, and the refusal is now assigned as error. The plaintiff had herself in her declaration averred that she had gotten off on the south side about the center of the car, and that she had stood some few feet away from the car until it had passed on east, and that only then did she start to cross the two tracks between her and the opposite side of the street. How far the car had passed she does not, in her testimony, say, because, she says, she did not look to see how far it had gotten away after she started to cross, or before going upon the west-bound track. Her companion, the witness Cleveland, referred to, testified that before reaching the west-bound track the car from which they had gotten off had about reached Sheridan avenue, some 300 feet east of Field avenue. Now, if this was the case, it is manifest that the car approaching from the east on the west-bound tracks, the car which collided with the plaintiff, had not "approached," in the plain sense and meaning of the ordinance, the car from which she had gotten off, so as to require it to slacken its speed to three miles per hour. The obvious purpose of the ordinance is to guard against injury to passengers getting on or off a car, and a car cannot be said to be approaching a car "stopped" or which is "about to stop to permit passengers to get on or off" when such cars pass each other at a distance such as that indicated by the evidence referred to. The special request should have been given, and the nonapplication of that provision explained to the jury, if they believed the testimony.

The question of the contributory negligence of the plaintiff was sharply presented by the evidence of the plaintiff herself. Kercheval street was 60 feet wide from curb to curb, and was perfectly straight. After the car from which she had alighted had passed on, there was no obstruction to seeing the approach of the car on the west-

bound track. The hour was midnight, the approaching car was well lighted, and there was no traffic to prevent hearing. Yet the plaintiff says she looked east before starting to cross, and looked again when in the space between the two tracks, and neither saw nor heard this car coming from the east, and that she never did know of its presence until it struck her just as she was about to take the last step which would have placed her beyond the track upon which it was coming. The witness Cleveland says he, when about to go upon the west-bound track, looked east as far as the next cross-street and saw no car. The plaintiff, when interrogated, said:

"We stepped back two or three steps after we got off the car, and stood there south, toward the south curb. We stood there until the car passed, facing toward the north. I looked around toward the east, and then we started to cross. I looked toward the east, naturally, to see if there was a car coming. I did not see any car coming. Q. How far do you think you looked toward the east? A. Well, I don't know how far. I should think as far as Sheridan avenue, which is the next street east of Field crossing Kercheval. It was just an ordinary night, neither light nor dark. Q. Did you look to the east before or after the car that you had gotten off from started up again? A. Just as it passed I looked toward the east. Q. Now, you say as you stood here you were facing north. That would bring you facing this car? A. Yes, sir. Q. And this car was going to the east? A. Yes, sir. Q. When did you look toward the east? A. As I said, just as the car started to pass. Q. Could you see up the track on both tracks when you looked? A. Yes, sir. Q. Did you see any car coming? A. No, sir. Q. What did you do after that? A. I said we started crossing in a diagonal direction. Q. Diagonally, which way? A. That would be toward the northwest. Q. Where you stood was above the corner, was it? A. Yes, about 20 feet east. Q. And you started diagonally northwest to the corner, did you? A. Yes, sir. Q. While we are waiting for the blackboard, what did you do next after you looked east to see if a car was coming; after this car had started on east, what did you do? Mr. Leete: Started to pass, she said. Q. Had the car gone by when you started across the track? A. Yes, sir; as it passed we started across, for we stood there until the car did pass. Q. Then you say you started in a diagonal direction across the track? A. Yes, sir. Q. Then go on and tell what you did. A. Well, we started across, as I said, toward the northwest, and when we got—I suppose it was the space—we got to about the space between the tracks, when I looked toward the east again. Q. You were then in the space, you say, between the two tracks— Mr. Leete: No: she just said just within the space between the tracks. Let us have the answer read. A. No; I said we were some place in the space. It might have been about the space—some place in the space, I would not be positive to that: it wasn't on the north track. Q. Some place in the space between the tracks when you looked to the east again? A. Yes, sir. Q. Did you see any car coming this time? A. No; I didn't."

On cross-examination she said, in respect to looking when between the tracks, these tracks being about 5 feet 3 inches apart that is, from the north rail of the east-bound track to the first rail of the parallel west-bound track:

"Q. Now, I understand that at that time you looked to the east and saw no car coming on the northerly track; is that right? A. The time I was in the space, yes, sir. Q. How far to the east could you see? A. Well, I don't know just about how far it was. Q. A block? A. I don't think it was a block. I could not tell exactly how far I did look. Q. As far as your vision could carry you could see? A. As far as I could estimate a safe distance, you know. Q. Oh, did you limit your looking? A. No; I didn't stop to limit anything. Of course I didn't think about it. Q. Then you looked and looked as far as you could see? A. I didn't try to see how far I could see. Q. You didn't try? A. No; I didn't stop to see how far I could see down the street, but what I would estimate, you know, as a safe distance, you know; just to look around as you naturally look around to see if a car were coming, and you would not know

how far you looked. Q. How far you looked you don't know? A. No, sir. Q. It may have been as far as the whole of that block? A. I don't know but I should judge it would be about, maybe, a couple of car lengths. Q. You looked a couple of car lengths; that is your best judgment? A. Yes, sir. Q. There was no obstruction at the end of a couple of car lengths, not in the street, anyway? A. None that I know of. Q. None that you know of? A. No. Q. Then you proceeded, after having looked a couple of car lengths on over the rest of that space and upon the car track, and were struck when you were somewhere in the middle of the tracks; is that right? A. No; I was not in the middle of the north track; I was almost across the north rail. Q. You said one step more would have taken you off? A. I think it would. Q. You think that would have been a little beyond the middle of the track? A. I think so; a lady does not step as far as a man. Q. And then the first thing you knew was when Mr. Cleveland called your attention to the approaching car? A. It was just about that soon before I was hit (snapping her fingers). Q. How close to you was it, then, when you first saw the light of the car? A. I didn't see it. Q. You didn't see any car? A. I didn't see any lights or hear any gong, and it was too quick for one to holler. I suppose I was struck before he got the words out of his mouth. Q. It was right on you? A. Yes, sir. Q. Why didn't you see it when it was 20 feet away? A. Well, I don't know. Q. You don't know? A. Of course, when it was 20 feet away, I don't known how far I was across. Q. Why didn't you see it when it was 50 feet away? A. I don't know how far that car would have been at that time. Q. I am asking you why you didn't see it when it was 50 feet away? A. If the car was within 50 feet of me at the time I looked the two car lengths, it would have been within the distance of my range of vision. That is the distance I looked, of course; I would have seen it, but I think I looked that far and it was not in sight. Q. When it was 10 feet away from you it was within your range of vision, was it not? A. If I had looked around. Q. When it was within 20 feet of your range of vision you could have seen it, could you not? A. I don't know how fast it was going. Q. If you looked when it was 20 feet away, you could have seen it? A. I didn't look all the time. I said I looked twice, and, when I looked the last time, I didn't see it. Q. You didn't see it when it was 50 feet away? A. I told you I didn't see it at all."

Did the court err in submitting the question to the jury upon this defense of contributory negligence? At the conclusion of the plaintiff's evidence the defendant moved the court for a directed verdict. This was denied, and an exception reserved. The defendant then introduced evidence, and at the conclusion of all of the testimony renewed its motion for a directed verdict upon the whole of the evidence. This was denied, and the case submitted to the jury, who found for the plaintiff. The introduction of evidence after a motion for a peremptory charge at the conclusion of the plaintiff's evidence was a waiver of that motion, and no error can now be assigned to that action of the court. Accident Ins. Co. v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685, 30 L. Ed. 740; Union Pacific Ry. Co. v. Calaghan, 161 U. S. 91, 16 Sup. Ct. 493, 40 L. Ed. 628; Travelers' Ins. Co. v. Randolph, 78 Fed. 754, 759, 24 C. C. A. 305. But such a motion may be renewed at the close of all the evidence, in which case the whole of the evidence, that introduced by the plaintiff originally and that introduced by either party subsequently, must be taken into consideration. Travelers' Ins. Co. v. Randolph, cited above. The question is not a mere matter of proceeding or practice in the Circuit Court, and is, therefore, not within the "conformity statute" (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]), and cannot be affected by any state statute or practice upon the subject. Everything after judgment, looking to a review by an appellate court, is regulated solely by the acts of Congress, the

practice at common law, and the rules and decision of the federal courts. Kentucky Life Ins. Co. v. Hamilton, 63 Fed. 93, 98, 11 C. C. A. 42; Chateugay Ore & Iron Co., Petitioner, 128 U. S. 544, 9 Sup. Ct. 150, 32 L. Ed. 508; Hudson v. Parker, 156 U. S. 281, 15 Sup. Ct. 450, 39 L. Ed. 424; Indianapolis & St. Louis R. R. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898; Fishburn v. Railway Company, 137 U. S. 60, 11 Sup. Ct. 8, 34 L. Ed. 585; Southern Pacific Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942. The question as to whether the court erred in refusing to instruct a verdict is, therefore, properly saved by the motion renewed after the close of all the testimony.

The contention is that it was a physical impossibility for the plaintiff to have failed to see a lighted car approaching from the east, if she had looked or listened as it was her duty to do before going upon that track upon which the car was approaching. But the plaintiff testified that she did look and did not see. When she first looked she says she observed the track as far as Sheridan street, the next street crossing Kercheval avenue east of Field. If the jury believed this, then her observation covered a distance of about 300 feet. She was then about 20 feet from the space between the two parallel tracks. Reaching that space, she says she again looked and saw no car. Her range of vision, she says, did not cover more than 50 feet, or 2 car lengths. Asked why she did not see the car when 50 feet away, she said:

"If the car was within 50 feet of me at the time I looked the 2 car lengths, it would have been within the distance of my range of vision. That is the distance I looked, of course; I would have seen it, but I think I looked that far and it was not in sight."

The question upon this evidence is whether one about to cross a street car track upon the streets of a large city, at a public crossing at a street corner, is, as a matter of law, guilty of such contributory negligence as to require a peremptory instruction to find for the street car company, because, before crossing, she did not observe the tracks for an approaching car beyond the space of 50 feet?

It is possible that this car was not within her limited range of vision, and that she did not see a car within that range, as she testified. So it is possible, and indeed probable, from all the circumstances, that, if she had extended her observation even a few feet east of the distance covered by her glance, she would have seen this well-lighted car very close upon her. The plaintiff in error cited and relies upon Northern Pacific Railroad Co. v. Freeman, 174 U. S. 379, 384, 19 Sup. Ct. 763, 43 L. Ed. 1014. There Freeman was driving across a railroad crossing. He was struck and killed by a passing train which he could have plainly seen if he had looked. The court, discussing the evidence of witnesses tending to show that he did not look or listen, said:

"If, in this case, we were to discard the evidence of the three witnesses entirely, there would still remain the facts that the deceased approached a railway crossing well known to him; that the train was in full view; that, if he had used his senses, he could not have failed to see it; and that, notwithstanding this, the accident occurred. Judging from the common experience of men, there can be but one plausible solution of the problem how the collision occurred. He did not look; or, if he looked, he did not heed the warning, and took the chance of crossing the track before the train could reach him. In either case he was clearly guilty of contributory negligence.

"The cases in this court relied upon by the plaintiffs are all readily distinguishable, either by reason of the proximity of obstructions interfering with the view of approaching trains, confusion caused by trains approaching simultaneously from opposite directions, or other peculiar circumstances tending to mislead the injured party as to the existence of danger in crossing the track.

"Upon the whole, we are of the opinion that the testimony tending to show contributory negligence on the part of the deceased was so conclusive that nothing remained for the jury, and that the defendant was entitled to an instruction to return a verdict in its favor. The disposition we have made of this question renders it unnecessary to express an opinion upon the instruction as to damages."

But there is a distinction between the care usually exercised by reasonably prudent persons in crossing the tracks of a commercial steam railway and that exercised in crossing a street railway track upon the streets of a city. Street railway tracks are necessarily to be crossed with great frequency by reason of their occupancy of public streets. Such cars also pass with great frequency. There are often times and places when passing cars succeed each other so closely that cars are always very near the stream of crossing travel. Again, the facility with which such cars are stopped and the frequency of their stopping makes the danger measurably less than that incurred at an ordinary railroad crossing. So also the degree of caution and care ordinarily exercised by the motorman, in view of all the surroundings, is necessarily greater than that usually required or exercised by engineers upon commercial steam engines. The question of negligence, contributory or otherwise, is necessarily dependent upon the facts surrounding each case. There is no absolute standard of negligence applicable to all cases. Conduct which might be negligent in driving across a steam railway track might not be negligent in crossing on foot at the same place. Conduct of a traveler crossing a street railway track might not be so imprudent as to constitute negligence, as a matter of law, which at a commercial railway crossing would be legal negligence. These considerations lead us to think that it cannot be safely said that the plaintiff was guilty of such gross imprudence as to require the court to withdraw from the consideration of the jury the question as to whether, if they believed her evidence, she had or had not acted with that degree of prudence which reasonably prudent persons should exercise in her situation. The distinction we draw has been noticed and approved in Cincinnati Street Ry. v. Whitcomb, 66 Fed. 915, 14 C. C. A. 183; Tacoma Railway Co. v. Hays, 110 Fed. 496, 49 C. C. A. 115; Marden v. Portsmouth Railroad Co., 100 Me. 41, 60 Atl. 530, 69 L. R. A. 300, 109 Am. St. Rep. 476; Ryan v. Railroad, 123 Mich. 597, 82 N. W. 278; and McQuisten v. Detroit Street Ry., 147 Mich. 67, 110 N. W. 118.

In respect to this testimony of the plaintiff as to looking out before going upon the track, the court said to the jury:

"I charge you that the law is that, if the plaintiff before going on the track looked a distance she thought sufficient to enable her to cross the track and saw no car, she had a perfect right to attempt to cross, and, if the fact that she was struck shows she erred in her judgment, this does not make her guilty of contributory negligence."

This was manifest error. The question is not what she thought a sufficient distance to observe before going upon the tracks, but whether her conduct in not observing for a longer distance was that of a reasonably prudent person. If it was not, it is not material that she thought she was acting prudently, if her conduct did not conform to that of reasonably prudent persons under all the circumstances of the case. It is true that in an earlier part of the charge the court did say, in respect of her testimony, that:

"If you believe a reasonably prudent person would have looked further than that under the conditions that were presented her that night before attempting to cross the track, then I charge you she was guilty of negligence, and cannot recover, and it is your duty to render a verdict in favor of the defendant. If you believe the car was in sight of the plaintiff and could have been seen if she had looked carefully just before she stepped on the north track, then you have a right to find that she did not look, or looked carelessly, and in either case you will render a verdict in favor of the defendant."

But this did not, in view of the very close character of this question of contributory negligence upon the plaintiff's own testimony, cure the later and more emphatic statement we have criticised.

The other assignments of error are not important, and may not again arise. We therefore pretermit any opinion as to them.

Judgment reversed.

Application to file an additional brief of the defendant in error in this case is denied. Rule 24 (150 Fed. xciii, 79 C. C. A. xciii) provides for the filing of a brief by each side within a definite time fixed by the rule. But the rule does not provide for any further briefs. We have accepted such additional briefs when filed before the case was called for hearing. There is no authority under the rules or practice of this court for filing additional briefs at or after the hearing without special leave of court upon sufficient ground shown. Supreme Court Rule 20, par. 4, 108 U. S. 584 (3 Sup. Ct. xii). Without such leave or the consent of the opposite side, the clerk has no authority to file such additional briefs. While the court will not by any arbitrary rule cut itself off from additional light, there was in this case no sufficient reason for opening the case for filing brief at the time the application was made to the court.