## WASHINGTON RY. & ELECTRIC CO. v. STUART.*

(Court of Appeals of District of Columbia. Submitted February 6, 1920. Decided June 2, 1920. On Motion for rehearing, October 4, 1920.)

No. 3309.

1. **Street railroads ⊙⊷117 (23)—Contributory negligence in failing to look and listen a question of fact.**

   Failure to look and listen before attempting to cross a street railway track is not generally negligence per se; but when the undisputed evidence establishes exceptional circumstances, which so conclusively indicate negligence that there can be no reasonable basis for drawing a different conclusion, the question is one of law for the court.

2. **Street railroads ⊙⊷112 (3)—Railroad has burden of proving contributory negligence.**

   The burden of establishing contributory negligence on the part ‑of the driver of an automobile, struck by a street car at a crossing, is on the street railway.

3. **Appeal and error ⊙⊷930 (1)—Testimony construed in favor of successful party.**

   In reviewing a judgment on a verdict in favor of plaintiff, he must be given the benefit of the most favorable construction which the testimony will admit of.

4. **Street railroads ⊙⊷99 (10)—Driver of automobile, seeing street car at considerable distance, need not stop and wait.**

   An automobile driver, seeing a street car coming a considerable distance away, is not bound to stop and wait for it to pass.

5. **Street railroads ⊙⊷99 (9)—Automobile driver may assume that street car is going at lawful speed and under control.**

   An automobile driver about to go on a street railway track at a street intersection, has a right to assume that an approaching street car is moving at a lawful speed and that the motorman is on the lookout and will bring his car under control.

6. **Evidence ⊙⊷5 (2)—Common knowledge that it is difficult to judge of speed of approaching vehicle.**

   It is a matter of common knowledge that it is very difficult to judge of the speed of a vehicle approaching directly toward one.

7. **Street railroads ⊙⊷117 (29)—Automobile driver's contributory negligence at street intersection held a question for jury.**

   In an action for injuries in a collision on a street intersection between plaintiff's automobile going 2 miles an hour, and a street car, running 30 miles an hour, whether plaintiff was guilty of contributory ‑negligence in failing to look and in proceeding across the double tracks, after having stopped to allow another car to pass, held a question for the jury

*Certiorari denied 254 U. S. ——, 41 Sup. Ct. 63, 65 L. Ed. ——.

8. **Street railroads** ☜117(35)—**Negligence under last clear chance doctrine held a question for jury.**

In an action for injuries in a collision between plaintiff's automobile and a street car at a street intersection, evidence *held* to justify the submission of the case to the jury under the last clear chance doctrine.

Van Orsdel, Associate Justice, dissenting.

### On Motion for Rehearing.

9. **Appeal and error** ☜833(4)—**On rehearing, matter claimed to have been determined on things dehors record should be definitely pointed out.**

When counsel charges, in support of a motion for rehearing, that the court based its opinion on things dehors the record, he should point out definitely the matter referred to, or be prepared to have his claim put aside as inconsequential.

10. **Appeal and error** ☜712—**Court of Appeals is confined to facts disclosed in record.**

The Court of Appeals confines itself scrupulously to the facts disclosed by the record and the inferences legitimately deducible therefrom.

Appeal from the Supreme Court of the District of Columbia.

Action by George C. Stuart against the Washington Railway & Electric Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Geo. P. Hoover, of Washington, D. C., for appellant.

Henry E. Davis and Geo. H. Calvert, both of Washington, D. C., for appellee.

SMYTH, Chief Justice. This is an action in tort. Stuart sued the street railway company for damages resulting to him from a collision on Connecticut avenue and N street, between one of the company's cars and his automobile, due, as he alleges, to the negligence of the company. From a judgment in his favor the defendant prosecutes an appeal.

There is testimony that at the time of the accident the car was running "at least 30 miles an hour." The company did not deny this, but at the completion of the plaintiff's testimony moved for a peremptory instruction to the jury to return a verdict in its favor, on the ground that the plaintiff's right to recover was barred as a matter of law by his contributory negligence. The motion was overruled. The company electing to stand on its motion, the court submitted the question of contributory negligence to the jury, and also advised it that if it found that plaintiff was guilty of such negligence he could still recover, if the motorman operating the car, after he had discovered, or by the exercise of reasonable care could have discovered, plaintiff's peril, might have prevented the accident by the exertion of reasonable care. The company asserts that there is nothing in the testimony to support either instruction, and assigns as error the giving of each. These are the only matters complained of.

[1] It is urged by the company that the evidence conclusively established that Stuart failed to look and listen before entering upon the street car track, and that because of this he is chargeable, as a matter of law, with negligence contributing to the accident. Many decisions are cited in support of the proposition. Most of them deal with the duty of a person about to cross the tracks of a steam railroad. The rule in

such a situation is quite different from that which applies in a case like the one before us. A railroad train or an interurban car is operated on the company's right of way. No one has a right to assume that, as it approaches a street or road crossing, it will be under control, with a view of stopping promptly if the safety of a pedestrian or other person crossing the track requires it. This distinction has been recognized and applied many times, not only by this court, but by the courts of other jurisdictions. Chief Justice Alvey, in Capital Traction Co. v. Lusby, 12 App. D. C. 295, 302, said:

"The principle of look and listen, of general application in cases of steam railroad crossings, can hardly be applied in its strict sense to the crossing of a street railroad, and therefore it could have no proper application to cases like the present."

This view was followed in City & Suburban Ry. Co. v. Cooper, 32 App. D. C. 550, 557, Capital Traction Co. v. Apple, 34 App. D. C. 559, 566, and Capital Traction Co. v. Crump, 35 App. D. C. 169, 180, and is the settled law of this court. It is also in harmony with the holdings in other jurisdictions. In Detroit United Railway v. Nichols, 165 Fed. 289, 296, 91 C. C. A. 257, which was a street car case, it was urged that, according to the decision of the Supreme Court of the United States in Northern Pacific Ry. Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014 (a steam railroad case), the plaintiff was guilty of contributory negligence as a matter of law by failing to look and listen before crossing a street car track. Judge Lurton, afterwards Mr. Justice Lurton, speaking for the Circuit Court of Appeals for the Sixth Circuit, rejected the argument. He said:

"But there is a distinction between the care usually exercised by reasonably prudent persons in crossing the tracks of a commercial steam railway and that exercised in crossing a street railway track upon the streets of a city. Street railway tracks are necessarily to be crossed with great frequency by reason of their occupancy of public streets. * * * There are often times and places when passing cars succeed each other so closely that cars are always very near the stream of crossing travel. Again, the facility with which such cars are stopped and the frequency of their stopping makes the danger measurably less than that incurred at an ordinary railroad crossing. * * * There is no absolute standard of negligence applicable to all cases. * * * Conduct of a traveler crossing a street railway track might not be so imprudent as to constitute negligence, as a matter of law, which at a commercial railway crossing would be legal negligence."

In support of his holding the judge cited Cincinnati Street Ry. v. Whitcomb, 66 Fed. 915, 14 C. C. A. 183, Tacoma Ry. Co. v. Hays, 110 Fed. 496, 49 C. C. A. 115, Marden v. Portsmouth R. R. Co., 100 Me. 41, 60 Atl. 530, 69 L. R. A. 300, 109 Am. St. Rep. 476, Ryan v. Railroad, 123 Mich. 597, 82 N. W. 278, and McQuisten v. Detroit Street Ry., 147 Mich. 67, 110 N. W. 118.

Thompson, in volume 8, the latest volume, of his work on Negligence, section 1443, says, as the result of his study of the cases:

"The general doctrine is that failure of a traveler to look and listen before attempting to cross a street railway track is not negligence per se; but, when the undisputed evidence establishes exceptional circumstances which so conclusively indicate negligence in failing to look and listen that there can be no reasonable basis for drawing a different conclusion, the question is one of law for the court. The duty to look and listen depends largely on the circumstances of each case."

This, we think, states the correct rule of law, and is in harmony with the great weight of authority. Any expressions to the contrary in previous decisions of this court are overruled. Applying this doctrine to the case at bar, was the plaintiff guilty of such negligence as required the giving of the peremptory instruction?

[2, 3] We must remember, in considering this, that the burden of establishing contributory negligence was on the street railway (Atchison v. Wills, 21 App. D. C. 548, 563; Railroad Co. v. Gladmon, 15 Wall. 401, 407, 21 L. Ed. 114), and that we must give to the plaintiff the benefit of the most favorable construction which the testimony will admit of (Thomas R. Riley Lbr. Co. v. McHarg, 47 App. D. C. 389, 390, and cases cited therein).

[4-7] First, does the evidence clearly and conclusively establish that Stuart did not look and listen before entering the zone of danger? He drove his automobile up Connecticut avenue to the south line of N street, intending to go to a point on that street west of the avenue. When he reached the south line of the street, he stopped to allow a north-bound car to pass. After it had done so, he looked to the south and saw another street car coming north, about a block away. Then he looked north, and saw that the car which had passed was a little more than a block from him. He then signaled with his hand his intention to cross the avenue. He started, running at the rate of 2 miles an hour. As he turned onto the north-bound track, he looked to the north again and saw no car approaching. When he was about halfway across the south-bound track he was struck. From the time he started until the collision he traveled about 40 feet. At one time he said that as he was "about to enter upon the south-bound track he still had an unobstructed view up Connecticut avenue and saw no car." From this it would appear that he looked then, but later, when asked directly at what point he was when he last looked north, he said that it was when he "was making the turn." When "he turned on the north-bound track he looked to the north, but did not see the street car." South-bound cars turn onto the avenue at Dupont Circle, 645 feet north from where he was, and he could not see a car until it had made the turn. Whether his failure to see a car when he entered upon the north-bound track was due to the obstruction of the north-bound car which had just passed, or to the fact that the south-bound car had not yet come around the curve at Dupont Circle, does not appear.

On the hypothesis that it was his duty to look before he entered the zone of danger, what were the limits of that zone? The moment he went upon the north-bound track he was menaced by the oncoming car from the south, and as he advanced he came within range of any car that might be approaching from the north. There is no evidence that he could have safely stopped between the tracks. After he got onto the north-bound track he was compelled to go forward or backward. It appears, then, that the zone of danger commenced about 2 feet east of the north-bound track and extended to a point the same distance west of the south-bound track. Before entering it he looked, and saw no car coming from the north. After he had entered it, looking either north or south would have availed him nothing. He was, as we have said, compelled to go forward or backward. Knowing that there was a car advancing from the south, and that none was coming from the north

when he entered the danger sphere, he proceeded. Whether in doing so he displayed proper caution for his own safety was a question to be disposed of by the jury, and not by the court.

Second. The company says that, if he had looked before entering the sphere of danger, he would have seen the car, and, since he did not see it, he did not look. Assuming that he did not look, he cannot be charged with knowledge of anything but what he would have discovered if he had looked. Where was the south-bound car at that time? We can determine this only by considering the speed at which he and the street car were traveling. Placing on the testimony the construction most favorable to the plaintiff, as we must do, he was going at the rate of 2 miles an hour, and the car at 30 miles an hour. Between the time he started and the time he was struck he traveled 40 feet. How far he went after he started, and before he made the turn onto the north-bound track, we do not know. If it is material to know, then the street car company has failed to furnish us with all the facts necessary to establish their proposition that he was guilty of contributory negligence. It must have been some distance; let us say it was 10 feet. Hence, from the time that he looked until he was struck, he traveled 30 feet, which required 10 seconds, going at the rate of 2 miles an hour, or 3 feet a second. The car was running at the rate of 30 miles an hour, or 44 feet a second. In 10 seconds, it would travel 440 feet. Therefore, as he turned upon the north-bound track, if he had looked he would have seen the car on the south-bound track approaching at a distance of 440 feet away. If, however, we do not deduct the 10 feet, but say that he traveled 40 feet from the time he entered the zone of danger, the street car was 572 feet away at that moment. Was he under those circumstances bound to stop and wait until the car passed?

"Surely, one seeing a car coming a considerable distance away is not bound to stop and wait for it to pass. If such were the rule one could rarely cross a street, without being guilty of negligence, where cars follow each other at short intervals." Capital Traction Co. v. Apple, 34 App. D. C. 559, 570.

But it is urged that, if he had looked, he would have discovered that the car was approaching at a furious rate of speed, and in those circumstances he was not justified in attempting to cross. He could not give all his attention to the south-bound car. He was also required to look out for the north-bound car, as well as look ahead, and he was required to give attention to the operation of the automobile. Besides, he had a right to assume that the street car was moving at a lawful rate of speed. City & Suburban Ry. v. Cooper, 32 App. D. C. 550, 557; Capital Traction Co. v. Apple, 34 App. D. C. 559, 572. If, however, he could have studied the speed of the street car as it approached him, he might have realized that it was running at a very high rate. He did not have this opportunity. He would have been looking almost directly into its face, and it is a matter of common knowledge that under such circumstances it is very difficult to judge of the speed of an approaching vehicle. But, in view of the other matters which claimed his attention, all he could have done was to glance at the car as it bore down upon him. Whether or not he could, under those circumstances, have appreciated its speed, was a fair question of fact.

Assuming, however, that he did appreciate that the car, 440 feet away, was going at the rate of 30 miles an hour, he had a right to act

upon the theory that the motorman was looking ahead, as his duty required, and would, in the performance of that duty, bring the car under control before reaching the crossing, so as to be able to stop it there if necessary. Capital Traction Co. v. Apple, supra, 34 App. D. C. 571, where many cases are cited. In that case it was said:

"* * * It is the duty of the operator to have his car under ready control, so that it may be readily stopped when the danger is found to be imminent."

See, also, McDermott v. Severe, 25 App. D. C. 276.

We are not prepared to say that a person about to cross a street car track in the city, who sees a car 440 feet away, more than an ordinary block, running toward him at a high rate of speed, is bound to stop and let it pass, or subject himself to the charge of contributory negligence, in the event of an accident resulting in his injury, if he does not do so. Whether or not, under all the circumstances, Stuart was guilty of lack of proper care for his own safety, was a question for the jury.

[8] We now come to a consideration of the appellant's other contention, namely, that there was no evidence justifying the application of the doctrine of "last clear chance" or "discovered peril." It is pointed out that no witness testified that the car could be stopped in time to avoid the accident after the motorman discovered, or should have discovered, the dangerous situation of the plaintiff. This is true, and in consequence the case is very weak in that respect. But none the less there are, in our opinion, circumstances in the record sufficient to justify the inference that the car could have been stopped, if proper precaution had been taken, before the collision took place. The testimony tended to show that just prior to the collision the motorman was in conversation with a person standing beside him on the front platform, that the car was running at the rate of 30 miles an hour, that no gong was sounded, and that there was no appreciable change in the speed immediately prior to the accident. This indicates that the motorman did not see Stuart until he struck him, and that he made no effort whatever to reduce the speed of the car before the collision. In fact, the testimony is conclusive upon the point that the speed of the car was not reduced before the automobile was hit.

As we have indicated, when Stuart entered the place of danger, the car was 440 feet away. If the motorman had been looking, he would have discovered him at this point, and would have seen that if Stuart stopped he might be struck by the north-bound car, and that if he advanced he might be struck by his car unless it was stopped. He had 440 feet in which to bring the car under control and stop it. According to the uncontradicted testimony, the car was stopped within 45 feet after the impact. It is true the weight of the automobile must have contributed something towards retarding the speed of the car. How much we cannot say definitely, but considering the distance the car was away when Stuart's peril was, or should have been, discovered, and the distance within which it was stopped after it struck, we think it was a fair question for the jury to say whether or not the motorman, if he had endeavored to do so, could have brought the car to a standstill

before the accident took place. To withdraw that question from the consideration of the triers of fact would have been improper.

The judgment is affirmed, with costs.

Affirmed.

Justice SIDDONS of the Supreme Court of the District sat in place of Associate Justice ROBB, who took no part in the consideration or decision of this case.

VAN ORSDEL, Associate Justice (dissenting). Since the majority opinion is based almost wholly upon a statement of facts not supported by the record, I deem it appropriate to quote at some length from the testimony as set forth in the record. Plaintiff testified that—

"When he stopped on the south line of N street, his automobile was headed north on Connecticut avenue, with the front of it even with the south curb line on N street, and when he started from that point the north-bound car, which he had allowed to pass, was over half way to Dupont Circle. Witness was asked why he waited so long before he started, and answered that before he started he looked down Connecticut avenue to see that he had time to pass before another car coming north would get to N street. When he looked south, he saw another north-bound car; but it was a block away, and he then started up. At the time he started up he was looking directly up Connecticut avenue, and had an unobstructed view of the street as far as Dupont Circle. At the time he started up, he saw no car south on Connecticut avenue at any point between Dupont Circle and N street, and he then made the left-hand turn to go across the car tracks.

·"After he started his car from the standing position, and while he was in the act of making the turn to go west on N street, he still had an unobstructed view up Connecticut avenue, and could see up as far as Dupont Circle, but saw no car coming. From the time he started until he was struck by the street car, he supposed his automobile was going about 2 miles an hour. He had his automobile in second gear. From the time he started until he got on the track and was struck he traveled about 40 feet. Just as he was about to enter upon the south-bound track, he still had an unobstructed view up Connecticut avenue and saw no car then; continued to drive, and was struck. Witness was asked what was there to prevent him from seeing the car if he had looked, and he answered there was nothing.

"The accident happened in daylight; the witness' eyesight is good, and his hearing is good. This was a large street car which struck him; he does not know what kind of a car it was. Witness has seen cars run on that line, and knows that the wheels of the cars make a rumbling noise, but that he did not hear that noise as he approached the track. Witness was asked if, before he entered upon the south-bound track, he again looked up Connecticut avenue, and answered: 'Why, I looked up just before that, and I was looking in front of me then.' Witness was asked at what point his automobile was when he last looked to the north, and answered, when he was making the turn, he was not on the south-bound track; he last looked to the north at the time he turned on the north-bound track; at the time he turned on the north-bound track he looked to the north, but did not see the street car."

The only eyewitness, aside from plaintiff, who pretends to testify to the circumstances attending the accident, was a policeman who was standing at a point near the intersection of the two streets, where he had full view of the approaching car and of the movements of plaintiff. He testified as follows:

"Witness was looking west on N street, and did not know whether the automobile came up Connecticut avenue, or up Eighteenth street, or where it came

from. When he noticed the automobile, it was between the curb and Connecticut avenue and N street, going west on N street to get across the car track. Witness was standing there leisurely looking that way with no object in view at all, but saw the automobile right in front of him, and as the automobile was about to get on the south-bound track, the front end of it just about to get on there, he noticed the street car coming down Connecticut avenue at a fast rate of speed, and in a second or two, he saw it could not help being an accident, and he holloed to Ronayne, 'Look there! there is going to be an accident,' and Ronayne turned around. In less time than witness can say it, this car came down, and this man's automobile had gotten on the south-bound track, and the car came up and hit it, and knocked it down Connecticut avenue to right opposite the trash box below the south curb of N street. * * *

"The witness was then asked to state, when he first saw the street car coming down Connecticut avenue, how far north of N street it was, and he answered at the time of the accident he did not decide at all; but after he was summoned, a week or 10 days ago, he strided it off, and from where the street car struck the automobile to the point where it was when witness first saw it the distance was '40 yards. Witness did not measure it, but it was 40 strides, and he made strides good and strong, so he thought they were about a yard. Witness was a motorman for three years and thinks he has knowledge of the rate of street cars. He was then asked how fast the car was going when he saw it, and he answered that it was going anywhere from 20 to 30 miles an hour, he would say at least 30 miles an hour. * * * Witness stepped off the distance, and would say the automobile was knocked 15 yards by the street car. * * * Witness stepped off the distance from Dupont Circle to Connecticut avenue, and it is 215 steps or yards."

Under the foregoing facts the case is a simple one. The only eyewitness testified that, when plaintiff was about to enter upon the south-bound track, the street car, traveling at the rate of 30 miles an hour, was 120 feet from the point of collision. In this situation, plaintiff, moving his automobile across the tracks at the rate of 2 miles per hour, was deliberately inviting disaster. At that moment, the car, traveling at 44 feet per second, was 2½ seconds from the point of the accident. Of course, upon the theory of the majority opinion, no inference of negligence can be drawn from the fact that plaintiff was moving his automobile at the rate of 2 miles per hour while crossing a double-track railway, with trains approaching on each track. They seem to proceed upon the hypothesis that the whole duty of care at railway crossings is imposed upon the street car company. But this is not the law. The duty is reciprocal. Capital Traction Co. v. Divver, 33 App. D. C. 332. The driver of an automobile is not performing his reciprocal duty to avoid accident when he loiters across the tracks in front of approaching trains at the rate of 2 miles per hour.

From the testimony of plaintiff we learn:

"That he is 44 years of age, and is engaged as business manager of the Episcopal High School, Alexandria, and has held that position for 20 years," that "the accident happened in daylight," and that his "eyesight is good and his hearing is good."

He had an unobstructed view from N street to Dupont Circle, a distance of 645 feet. It follows, therefore, that he either did not look when the law required him to, or else he looked so carelessly that he is in no better position than if he had not looked at all. The duty of

one attempting to cross railway tracks to look and listen is clearly stated by this court in Glaria v. Washington Southern Ry. Co., 30 App. D. C. 559, 566, where the court said:

"It is true that, where the undoubted facts and circumstances in evidence clearly show that one about to cross a railway track must inevitably have seen a coming car or train, if he had actually looked in its direction, the testimony of the injured party that he looked and failed to see it coming may be rejected, and his contributory negligence declared as matter of law notwithstanding."

And in Harten v. Brightwood R. Co., 18 App. D. C. 260, 263, the court said:

"The track was practically straight and wholly unobstructed for several hundred yards. One looking up the track for the coming car could not fail to see it, and it was not possible for the car to traverse the space along which it was clearly visible, between the time the plaintiff looked for it as she passed from one track to the other, and the moment when she stepped upon the rail and was struck by the fender attached to the front of the car."

Considerable discussion is indulged in the majority opinion as to the duty of a traveler to look and listen before attempting to cross a street railway track. I find no fault with the rule announced by Mr. Justice Lurton in Detroit United Ry. v. Nichols, 165 Fed. 289, 91 C. C. A. 257, which, in effect, holds that there may be exceptional cases when it is not contributory negligence as matter of law to enter upon a street railway track without looking and listening. The rule, however, announced in Thompson on Negligence, making contributory negligence as matter of law the exception, is not supported by the courts. Approving this rule, the opinion states that—

"Any expressions to the contrary in previous decisions of this court are overruled."

Not only has this court consistently held that, as a general rule, it will be contributory negligence to attempt to cross a street car track without looking and listening, but that, in a crowded street with cars and vehicles passing in rapid succession, with the view obstructed and the situation confused, so as to render impossible the exercise of the high degree of care imposed upon a traveler before entering upon railway tracks, the situation may be such as to compel an exception to the general rule. But that is not this case. The evidence discloses a clear street; no confusion whatever. The case is analogous to the situation disclosed in Barrett v. Columbia R. Co., 20 App. D. C. 381, where the court said:

"The accident occurred in open daylight. The plaintiff was familiar with the location, and all its environments. We must suppose that he well understood the dangers of attempting to cross the double tracks of a street railroad on a bicycle, without first seeing that he could safely do so without coming in conflict with passing cars. In this case the whole scene was open to the plaintiff; and he was required to exercise not only his senses of sight and hearing, but his common sense as well."

The cases cited in the majority opinion have little or no bearing upon this case. In the Crump Case, 35 App. D. C. 169, the accident did not occur from an attempt to cross the tracks. The plaintiff was driving a

closed automobile along the tracks and was run down by a car approaching from the rear. The accident in the Apple Case, 34 App. D. C. 559, occurred at night, and the evidence disclosed that the injured party stopped and looked before attempting to cross the tracks. In the Cooper Case, 32 App. D. C. 550, the driver of the vehicle saw the car approaching, but was induced to believe that the car was going to stop before reaching the crossing. In the majority opinion, in discussing the rule that failure to look and listen before attempting to cross railway tracks is generally negligence as matter of law, it is said that—

"Many decisions are cited in support of the proposition. Most of them deal with the duty of a person about to cross the tracks of a steam railroad."

Of the 38 cases cited in brief of appellant, 2 are steam railway cases, and 36 are street railway cases. In one of the steam railway cases (Glaria v. Southern Ry. Co., supra) the court, in support of its holding of contributory negligence as matter of law for failure to look and listen, quoted at length from the street railway decision in Harten v. Brightwood R. Co., supra. In the other steam railway case (Southern Ry. v. Gray, 241 U. S. 333, 36 Sup. Ct. 558, 60 L. Ed. 1030), the accident occurred in the nighttime, and the court, reversing the judgment, held that the motion for a directed verdict in the court below should have been granted. Outside of this jurisdiction, barring a very few exceptional cases, the rule of look and listen is the same with respect to both steam and street railways. Eminent jurists, in support of the rule, cite both classes of cases indiscriminately. Denver City Tramway Co. v. Cobb, 164 Fed. 41, 90 C. C. A. 459.

Having disposed of the case made by the record, I will now consider the case made by the majority, as set forth in their opinion. Much is made of the conceded negligence of the railway company. Of course, it was negligent, or we would have no case to consider. Its negligence forms the basis of this action. But the law recognizes what is called concurring negligence, and when that occurs, as in this case, the law furnishes no relief, irrespective of how gross or deliberate the negligence of the railway company may have been. Much is also made of the failure of the railway company to offer proof of contributory negligence. The result would not be different. No stronger proof of plaintiff's negligence could have been adduced by defendant than that given by plaintiff and his witnesses.

An interesting mathematical theory is advanced in the opinion, which rests wholly upon a mistaken premise. I agree that, with the approach of the car from the south, the danger zone began at a point 2 feet east of the northbound track. But the writer of the opinion estimates the distance from the center of the south-bound track to the east limit of the danger zone at 30 feet. While this is entirely outside of the record, I may be permitted to answer the theories of the majority by facts. The distance, instead of being 30 feet, is by actual measurement 12 feet. Plaintiff, instead of traveling 10 seconds after "the time he turned on the north-bound track," in fact traveled 4 seconds, and the street car,

267 F.—41

traveling at 44 feet per second, instead of being 440 feet away, was 176 feet away. This agrees with the testimony of the policeman.

Not satisfied with these figures, the writer of the opinion, in another of his numerous theories, extends the limits of the danger zone 40 feet from the center of the west track, and this fixes the car 572 feet from the point of collision when plaintiff entered the danger zone. Of course, the record supports no such presumption or inference. Any person familiar with local conditions knows that it is not 40 feet or 30 feet from the center of one railway track to the outside of the adjoining track, as double-track street railways are laid in the city of Washington. Such a finding would be amusing, were it not that in the last analysis the straphangers will pay the judgment.

We now come to the theory of confusion. It is sought to excuse the plaintiff by a statement that the north-bound car, which he stopped to let pass, may have obstructed his view toward Dupont Circle. But, again, my Associates have strayed from the record. Plaintiff testifies that he waited before starting until the car was more than half way to Dupont Circle, and that he had an unobstructed view up Connecticut avenue. This conclusively answers the theory of confusion, since, if plaintiff in fact looked, his statement as to what he observed must be accepted as true; while, if he did not look, he saw nothing, and could not, therefore, have been confused. On the other hand, if the car was more than half way to Dupont Circle before he started moving at the deliberate rate at which he proceeded, it could, moving at a lawful rate of speed, have reached the Circle before "he turned on the north-bound track," when, he testified, he looked and saw nothing. Hence the inference of confusion is wholly in conflict with the record.

But the majority, notwithstanding their finding that plaintiff was not guilty of contributory negligence, find defendant liable under last clear chance. Their conclusion is based upon the mathematical error already pointed out, and is inferred from the erroneous finding that the motorman "had 440 feet in which to bring the car under control and stop it," after plaintiff entered the danger zone. Returning again to the atmosphere of the record, we find that the whole issue on this point is whether the jury would have been justified in finding that the motorman could have stopped the car, running at 30 miles per hour, in 4 seconds. Referring to burden of proof, a subject vigorously called to our attention by the majority in their discussion of contributory negligence, it may not be amiss to suggest that the burden of establishing last clear chance is on the plaintiff, and no evidence was offered on the subject.

The majority seem to hold that plaintiff, though testifying that he did look, did not in fact look or listen for approaching cars; but they undertake to excuse his negligence by theorizing as to what he would have seen, if he had looked. In this the evidence of the policeman, plaintiff's witness, and by whose testimony plaintiff is bound, is totally ignored, and various presumptions and inferences substituted, which are drawn from a premise entirely outside of the record.

The affirmance of this judgment cannot be sustained upon any sound basis of law or justice, and should be reversed.

## On Motion for Rehearing.

SMYTH, Chief Justice. The motion for rehearing in this case must be overruled, but, because of the apparent earnestness with which it is pressed, we notice briefly the grounds on which it rests. Epitomized, they are: Erroneous conclusions of the court (a) respecting contributory negligence, and (b) the doctrine of last clear chance.

Concerning the first ground, counsel repeats his contention, made in his original argument, to the effect that in cases of tort arising out of street car accidents the failure of the plaintiff to look and listen before entering upon the track is an act of negligence which bars recovery under all circumstances; and he asserts that our opinion "very drastically changes the rule of law which has been established in this jurisdiction for nearly 20 years." Serious fault is found by him with our action in adopting the principle embodied in the extract taken from Judge Thompson's work on Negligence.

He admits:

"That there is this distinction between cases arising in accidents on steam railroads and those happening on street railways: In the steam railroad case, the duty of stop, look, and listen applies. In the case of street railways, the duty to stop does not apply, but the duty to look and listen does."

If by this he means that a failure to look and listen may be negligence as matter of law in some street railway cases, he is in accord with our opinion; but if he means that failure to look and listen is negligence as matter of law in all street railway cases he is wrong.

We have re-examined with care the decisions of this court on the subject. Counsel seems to rely on Harten v. Brightwood Railway Co., 18 App. D. C. 260, Barrett v. Columbia Railway Co., 20 App. D. C. 381, and Capital Traction Co. v. Snowden, 48 App. D. C. 344. In the Harten and Barrett Cases it was held that, under the facts appearing, the plaintiff was guilty of contributory negligence barring his right to recover. In the Snowden Case, it was said that on the evidence—

"*it may be* that, if defendant had interposed a motion for a directed verdict * * * on the ground that the evidence established contributory negligence as matter of law, it could have been sustained." (Emphasis supplied.)

This is as far as those cases go. They do not say that in all cases the negligence which will defeat recovery necessarily results from a failure to look and listen. Nor do they conflict in any wise with what we held in the original opinion. We there said, as we have just indicated by the quotation from Thompson, that there may be cases in which the facts require the court to say that the failure to look and listen establishes contributory negligence, and this is all that can be fairly claimed for the decisions relied on by him.

But counsel overlooked or ignored the holding in Capital Traction Co. v. Apple, 34 App. D. C. 559, and Capital Traction Co. v. Crump, 35 App. D. C. 169. In the first case it was said:

"That plaintiff's intestate did not stop, look, and listen before crossing the track in a city street would *not* warrant the conclusion of contributory negligence as a matter of law"—citing cases.

This language was repeated and approved in the Crump Case, where it was said:

"While it is the duty of every one, under ordinary circumstances, to use his eyes and ears amid conditions of danger, the failure to look and listen before entering upon a street car track does not constitute negligence as a matter of law."

That the question was thoroughly considered is evidenced by the opinion of Mr. Chief Justice Sheperd, who spoke for the court, and the dissenting opinion of Mr. Justice Van Orsdel. The latter, though concurring in the judgment of the court, pointedly refused to lend his assent to the declaration we have quoted. There were then two sets of decisions on the subject; one declaring that in some instances failure to look and listen barred recovery as a matter of law, and the other that the duty to look and listen did not apply at all. Counsel does not say which set he referred to when he stated that we had drastically changed the law, but we assume he was thinking of the first. The two lines were irreconcilable. One had to be modified. We believed the learned Chief Justice had gone a little too far in the Apple and Crump Cases, and it was to those cases we referred when we stated, after giving the extract from Thompson, that "any expressions to the contrary in previous decisions of this court are overruled." Thus the rule of decision in this court upon the point was freed from uncertainty and put into harmony with what we conceived to be the sounder authorities in this District, as well as in other jurisdictions, both state and federal.

[9, 10] The second ground of the motion needs but little attention. Counsel says that our application of the last clear chance doctrine is contrary to the overwhelming weight of authority, and that we proceeded with respect thereto on a hypothesis inconsistent with the evidence. Neither decisions nor texts are cited to sustain this contention. Nor is any effort made to establish by specific reference to the record that any theory advanced by us is inconsistent with the evidence. When counsel charges, in support of a motion for rehearing, that the court based its opinion on things dehors the record, he should point out definitely the matter referred to. If he does not, he must be prepared to have his claim put aside as inconsequential. We were guided, in considering the record, by well-recognized canons of construction, and confined ourselves scrupulously to the facts disclosed and the inferences legitimately deducible therefrom.

Both grounds of the motion are rejected as devoid of merit.