Owen v. Owen.

OWEN v. OWEN.

1. **Husband and wife:** ACTION BY WIFE AGAINST HUSBAND. Whether an action at *law* will lie, during coverture, by the wife against the husband for the recovery of a money judgment, *query.*

2. **Instructions:** DUTY OF JUDGE TO GIVE. It is the duty of the judge to see that every case so goes to the jury, that they have clear and intel-

ligent notions of the points they are to decide, and to this end he should give necessary instructions, whether so requested by counsel or not, and his failure so to do is held ground for a new trial where the verdict was not one which effectuated justice between the parties.

*Appeal from Howard District Court.*

MONDAY, JUNE 10.

ACTION BY WIFE AGAINST HUSBAND : CHARGE OF COURT.— Action at law by wife against husband, during coverture, to recover the sum of $1,600, the value of certain 7-30 United States bonds. In the petition it is alleged that these bonds were, by the defendant, given to the plaintiff " out of love and affection and for and in consideration of plaintiff's again living with defendant ; " that they were delivered to her ; that she had them for the space of six months, and that the defendant afterward procured them from the plaintiff, and sold and converted them to his own use. The answer specifically denies every material allegation in the petition. There was a trial, to a jury, upon testimony introduced by either party (all of which is in the record on this appeal). The cause was submitted to the jury without instructions from the court, and a verdict returned in favor of the plaintiff for $1,600. Defendant moved for a new trial, first, because the verdict was contrary to law ; second, because contrary to evidence ; third, because, from the amount and nature of the controversy, it is apparent that justice requires that a new trial be granted.

This motion being denied, the defendant excepts and appeals.

*J. O. Crosby* for the appellant.

*Reuben Noble* for the appellee.

Owen v. Owen.

DILLON, J.—In the exercise of our jurisdiction as an appellate tribunal, we are of opinion that it is our duty to reverse this judgment and remand the case for a new trial. After a careful review of the testimony, we are satisfied that, assuming, what the defendant seemed to concede, that such an action is maintainable, the verdict was not justified by the evidence.

In none of the quite numerous cases which we have decided, relative to the rights and powers of married women, have we been called upon to determine whether an action at law would lie, during coverture, by the wife against the husband, for the recovery of a money judgment against him. That question has not been argued, at least to any extent, by counsel on this appeal, for the reason, probably, that no such question was made in the pleadings or on the trial in the court below. We, therefore, leave this question where the parties and the record have left it, remarking simply that our law recognizes the wife's right to the separate ownership of her own property, and, thus recognizing the right, would doubtless furnish a remedy for its vindication. It is shown, by the plaintiff's own testimony as a witness, that she left the defendant (for what cause does not appear), and took their child east; that she returned without the child and went to her own house; that, a few days afterward, defendant called to see her, and requested her to live with him again, and said he would place every cent he had in her hands if she would do so.

Plaintiff replied that she did not want any of his money. The parties commenced living together. She testifies that he told her the next day that he would give her $1,600 in 7-30 bonds if she would consent to live with him, to which she replied, "I will go up to the farm and see how it looks, and perhaps I will live with you if

*1. HUSBAND AND WIFE: action by wife against husband.*

I like it. We went up that evening," so continues her testimony, " and he said he would give me money to go east again to get our little girl. I stayed up there four or five days; concluded to remain, and we came down to town with a team after my things; and, while we were alone in front of my house, he gave me $1,600 in bonds. It was on that account I went back to live with him again. I carried the bonds with me east and brought back a child with me. The child I brought back is not the same one I took away. The child I brought back is dead; and if you could inflict all the torments of the inquisition on me, I would not tell where the child is that I took away." Her evidence further shows that she held the child out to defendant as their child; that she brought home with her a trunk in which the bonds were kept. This is the substance of all of her testimony; and it has simply one corroborating circumstance of moment in the other testimony (mainly that of her children by a former husband), and that is this: that these children testify that she showed them the bonds in the trunk or in her possession, but this was not, at any time, in the presence of the defendant.

It also appears by the testimony of plaintiff's own witnesses, that after these bonds had been kept for a while in the trunk, the defendant, without remonstrance from the plaintiff, took them out and locked them up in his own secretary.

The defendant in his testimony utterly denied any gift of the bonds; said the trunk was his; that he kept the bonds there himself for a while; that when the coupons fell due he cut them off, and he and his wife went to Decorah and traded to the amount of them and more. It was also in testimony that plaintiff took an impression in wax from the trunk, and had a key made to fit it.

The other testimony in the case is not of such importance as to require it to be specially noticed. It was

shown that the plaintiff instituted proceedings by the township trustees against the defendant, on the ground of his alleged abandonment of her, and had all of his personal property seized; and that she has a bill in equity pending, claiming his real estate, by virtue of an unrecorded deed which she alleges he made to her and afterward took from her possession and destroyed.

From this general statement of the case it will be seen, that it was most undeniably one in which there should

2. INSTRUC-
TIONS: duty
of judge to
give.

have been clear instructions to the jury, as to the law governing it, and the rights of parties. To submit it to the jury without any directions to guide them, from the court, would be to reach a result almost as uncertain as the toss of a copper or the throw of dice.

It may be said that the counsel did not request instructions, and that therefore it was not obligatory on the court to give any. Such a view does not accord with our conception of the functions and duty of the judge. He should see that every case goes to the jury so that they have clear and intelligent notions of precisely what it is that they are to decide. His charge is their chart and compass. In this case the jury should have been told that any promise by the defendant to pay or to give money to his wife, to induce her to live with him again, was without consideration, and not binding, especially so, as it did not appear that she had any grounds whatever for not living with him.

The attention of the jury should also have been called to this precise point, viz.: Did the defendant ever deliver bonds to the plaintiff, and, if so, for what purpose? If they were merely put into her custody (which is a view not absolutely inconsistent with even her own testimony) then she cannot recover their value. If, on the other hand, the defendant voluntarily made an absolute gift of

them to the plaintiff and delivered them to her, as her own, then he would be liable or not liable, the judge stating which, according to his view of the law, if the defendant afterward, without her consent, took and converted them to his own use.

Although the case was submitted in hotchpoch, still we should 'not, for this reason, have reversed the judgment, if the result had been one which effectuated justice between the parties. What point the jury allowed the case to turn upon, what facts they decided, passes the wit of man to know. We can only suppose that they would have reached a just result, if the issues and the questions of fact and the law applicable thereto had been properly mapped out to them by the court.

Reversed.

Affirmed.