[Civil No. 1519.   Filed April 18, 1917.]

[164 Pac. 319.]

## MILLARD WOOLEY, Appellant, v. JOE A. LOCARNINI, Appellee.

1. APPEAL AND ERROR—OBJECTIONS BELOW—INSTRUCTIONS—NECESSITY OF REQUEST.—An instruction on counterclaiming defendant's measure of damages was not reviewable, where plaintiff neglected at the proper time to request a proper instruction, setting forth the true rule of damages as he understood it.

2. FRAUD—DAMAGES—DIFFERENCE BETWEEN ACTUAL AND REPRESENTED VALUE.—Where plaintiff pleaded in his reply to defendant's counterclaim for fraud in sale of land that the land was of the value paid by defendant, the measure of defendant's damages was the difference between the purchase price and the actual value as found; for, under such pleading, the purchase price was the represented value.

[As to measure of damages for misrepresentation in the sale of land, see note in 123 Am. St. Rep. 776.]

3. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTION ON MEASURE OF DAMAGES.—The giving of an instruction on measure of appellee's damages was not injurious, where the jury did not follow it, but applied a rule more favorable to appellant.

4. APPEAL AND ERROR—REVERSAL—TECHNICAL ERROR.—An instruction objected to as susceptible of being understood to require a finding for counterclaiming appellee in excess of the amount admittedly due appellant, in the event appellee suffered any damages whatever, was not reversible error, under the constitutional prohibition of reversal for technical errors, where the jury specially found the amount of appellee's damages, from which it deducted his admitted debt to plaintiff and returned verdict for the balance.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. G. W. Silverthorn, for Appellant.

Mr. M. J. Dougherty, for Appellee.

CUNNINGHAM, J.—During the month of July, 1913, the appellee visited Arizona for the purpose of buying a tract of land for farming purposes. He is a farmer, and had followed that occupation for a number of years in California. He visited friends at or near Gilbert, in Maricopa county, and while so visiting he, with his friends, met the appellant. Upon inquiry, the appellant offered to sell to the appellee 80 acres of productive farm land. The appellee was shown the land, and the parties had a number of conversations about the land and the quality of the land. The appellant fixed the price for which he offered to sell at $110 per acre. After the parties had concluded negotiations on the occasion of the appellee's visit, without arriving at any agreement, the appellee returned to California, and later wrote from California to the appellant, accepting the offer of the land for $110 per acre. Later, about the 1st of August, 1913, the appellee returned to the land, and a contract of sale was prepared and signed by the parties, by the terms of which the appellant agreed to sell the 80 acres of land described, for a consideration of $110 per acre or the full sum of $8,800, which should be paid to the party of the first part in the following manner: $800 had been paid; the sum of $15 per acre, or the sum of $1,200, should be paid as soon as an abstract of said prop-

erty had been prepared and found to show clear title, except certain encumbrances; and the balance of said purchase price, to wit, $6,800, on or before the fifteenth day of September, 1913. A failure to pay any of the amounts of money provided to be paid the parties agreed would work a forfeiture of the contract at the option of the seller. The appellee took possession of the land as agreed, and, agreeable to the parties, he paid $8,000 of the purchase price, and on January 7, 1914, $800 of the purchase price remained due and payable. Thereupon the appellee made, executed and delivered to the appellant his promissory note, due six months after date with interest, for the said balance of said purchase price of the land, and appellant accepted said note therefor. Prior to the date of maturity of the said note, the appellee notified appellant that the land involved was not of the quality represented, and that before the appellee paid the appellant the amount of the note, and other amounts of account between the parties, an adjustment of the matter would be insisted upon. The appellant accompanied the appellee over the land, and appellee pointed out portions of the land he claimed were not as represented, but which were worthless. No agreement was reached by the parties concerning this dispute. When the note matured, the appellant, as plaintiff, commenced this action to reduce the note and an account to a judgment. The defendant admitted the making of the note and its nonpayment. He admitted that he owed the account, and interposed a counterclaim based upon the allegations that the plaintiff "... represented to defendant, that the said lands were fertile, and every part thereof was of such nature that the same would raise good crops; that there was no sterile, or so-called 'slick' soil upon said land, 'slick land' being such land as would not respond to irrigation, and would not raise crops under any conditions of proper care and farming; also represented that plaintiff had raised crops upon each and every portion of said lands; that defendant, by an examination of said lands, could not ascertain that said representations were false, and relied upon plaintiff's statements, respecting the quality of said lands, and, relying thereon, then and there agreed to pay the plaintiff a total price per acre for said lands, the sum of $110 per acre; that all of said purchase price has been paid, except the amount represented by the

note described in the complaint. That the representations made by plaintiff to the effect that there was no 'slick lands' upon said 80-acre tract were false and fraudulent, and that plaintiff knew that they were so false and fraudulent, and knew that defendant relied upon same as being true, and were made for the purpose of inducing defendant to purchase said lands at a price greatly in excess of the real value of said lands, and defendant, relying upon said statements and representations as being true, did pay for said lands all the purchase price thereof, except the said note, . . . and was on account thereof cheated and defrauded to an amount . . . of over $4,000; . . . that defendant should recover that amount from plaintiff as the difference between the real value of the land and the value thereof had said representations been true."

The plaintiff replied or answered the counterclaim so set forth by the defendant. Therein he denies that he made the representations complained of on January 7, 1914, when the note was made, or at any time. He denies: "That said land was fertile, and every part thereof of such a nature that the same would raise good crops."

He denies: "That there was no sterile or slick soil upon said land, or that this plaintiff had raised crops upon each and every portion of said land."

The plaintiff further denies: ". . . That defendant, by an examination, could not ascertain that said representations were false, and denies that the defendant relied upon the plaintiff's statements, or any statements of plaintiff, regarding the quality of said land, but alleges that defendant purchased said land with full knowledge of the condition of the same after having examined said land by going upon the same and with full opportunity to judge of the conditions of said land and soil."

This portion of the plaintiff's reply is in effect such a character of pleading as amounts to an admission that plaintiff made the statements and representations which he is charged with having made, but that he did not make such statements with regard to the making of the note in suit. This portion of the pleading is a clear admission on the part of plaintiff that there is sterile, slick soil on the tract, and that plaintiff knew it existed thereon, and that the defendant

had ample opportunity to know that such soil was on the tract and the extent thereof, and with full knowledge in that respect the defendant nevertheless proceeded to, and did, purchase the land, after having examined the same. The issue thereby raised is: Whether defendant relied upon plaintiff's representations, which were admittedly false, or whether he relied upon the result of his personal examination of the condition of the lands. In other words, whether the false representations of the condition of the land, made by the plaintiff, were the proximate efficient cause of defendant's injury and damage. The reply continues further, as follows:

"Plaintiff denies that any representations made by this plaintiff to the defendant as to the quality and condition of said land were false and fraudulent, or that the plaintiff knew that any statements made by him to the defendant regarding said land were false and fraudulent, and denies that the defendant relied upon any statements made by plaintiff, or relied upon the truth of any statements made by plaintiff in regard to said land, or that any statements made by plaintiff in regard to said land, or that any statements whatsoever were made by this plaintiff with the intention of inducing the defendant to purchase said land at a price in excess of the value of said land."

The clear effect of these denials is to assert that, while the plaintiff did make the alleged representations, such representations so made are true, and were made with the intention of informing the defendant of the actual worth of the property represented, and for no other purpose. That the land as represented was actually worth the price asked and paid therefor, in both quality and condition. Consequently the "plaintiff denies that the defendant . . . was cheated or defrauded in any amount whatsoever." As a further answer, the plaintiff asserts that at the time defendant made the note, he had been in possession of the land several months, and thereby had full opportunity to determine the true condition and quality and value of the land. This entirely avoids the issue, and is not responsive thereto. It is surplusage. As a further answer the plaintiff says:

" . . . That said land sold by plaintiff to defendant was, at the time of said sale, in every respect of the quality and in the condition in which the same was represented by plaintiff

to be, and that the same was of the value paid therefor by defendant.''

The last answer is in effect the same as the preceding answers, all of which are simply reasserted in the last. Certainly, the plaintiff's defense to the counterclaim is, as determined from all of the allegations of his answer thereto, that the land sold and purchased was of the quality and in the condition which the plaintiff represented it, and, being of such quality and in such condition, it was actually worth the sum for which it was sold to the defendant. Consequently the answer is a denial when considered as a whole, that the representations and statements made by plaintiff to defendant as to the quality of the land were false and fraudulent, for the reason such statements made are true, and that the land sold was actually worth the price agreed upon.

Upon a trial the jury returned a verdict for the defendant in the sum of $115. As an explanation of their verdict, the jury included therein a special finding as follows:

''We find a total damage of $1,286 for defendant and deduct therefrom the plaintiff's claim for $1,171, leaving balance damage of $115.00.''

The verdict was recorded, and judgment entered in accordance therewith. From the judgment and from an order refusing a new trial the plaintiff appeals.

The controverted questions litigated on the trial were whether the plaintiff made any statements or representations relative to the quality of the land involved, and whether in fact the land contained sterile, hard, slick, worthless spots, and, if so, the amount in area of such worthless land contained in such spots.

The actual value of the land, at the time of its sale, is alleged by plaintiff to be $110 per acre, or $8,800 for the 80 acres, the amount of the purchase price. This fact is not questioned by the defendant otherwise than by his assertion that the land was not of the quality it was represented to be. Plaintiff asserts that it was of such quality. Hence, the plaintiff's allegations, to the effect that the land was of the quality represented, and was actually worth the purchase price agreed upon, is only partially controverted, but that the actual value of land of the quality represented was $110 per acre at the time of the purchase and sale is not controverted.

The defendant introduced evidence in support of his counterclaim, tending to show that the plaintiff did make the alleged statements and representations he is charged with having made, and frequently repeated them prior to the close of the agreement; that the statements made by the plaintiff were, in effect, that the 80 acres of land were all good farming land, and contained no slick, hard, worthless land, and that he would guarantee that it contained no such worthless land; that the defendant was a stranger to the Arizona lands, and so informed plaintiff; and that defendant relied upon plaintiff's statements and representations made regarding the quality of the land and its worth for farming purposes, of which the defendant informed the plaintiff prior to the time defendant agreed to purchase the land. The defendant further informed the plaintiff that he, defendant, would buy no kind of land other than good productive farming land; that thereupon the plaintiff stated and represented that this particular 80 acres of land was all productive farming land, and that he (plaintiff) would guarantee it of such quality. After a few days' consideration, the defendant, having returned to California, accepted the plaintiff's offer and notified plaintiff by letter that such offer was accepted, and in due time their contract of sale and purchase was prepared and signed, by the terms of which contract the defendant agreed to pay therefor $8,800 according to the conditions of the written agreement.

The evidence further tends to show that the defendant took possession of the land and paid $8,000 of the agreed purchase price, agreeably to some subsequent understanding of the parties; that on January 7, 1914, the balance of the purchase price, viz., $800, became payable; that the defendant made and delivered the note in suit as, and the plaintiff accepted such note in, payment of the said balance of the purchase price. Before the said note became due, the defendant found, by actual farming, that a great portion of the tract of land is in fact sterile, hard, slick, unproductive land, wholly worthless for the purposes of farming for which the defendant purchased the land. The amount of such worthless land is estimated by the witnesses at amounts from nothing, by plaintiff's witness, to 15, 18, 20, 25, 26⅔, and 30 acres, by the defendant's witnesses. The defendant estimated that

one-third of the tract was of such worthless land. Others of defendant's witnesses estimated 18 to 20 acres; others, 20 acres; still others as much as 30 acres of worthless sterile, hard, slick lands. No witness introduced by the defendant estimated the amount of such land as less than 18 acres. The plaintiff, testifying, did not admit that any part of the land is sterile or slick soil. He testified that it is all good productive soil. He admitted that barren spots appear on the land, the spots testified to by the defendant's witnesses as worthless slick land, but he asserted that while such spots occur, they are caused from defective irrigation, cultivation and from pasturing cattle on the land at a time when the ground was wet and the crop of alfalfa was too young to withstand such treatment. He estimated that the barren spots would aggregate about 15 acres, but with farmer-like care, such spots would produce to the same extent of fertility as the other concededly fertile portions of the tract.

The plaintiff, testifying to other matters, denied that he made any representations at all at any time with regard to the matter of slick, hard land on the tract. He states that the subject was not mentioned at any time.

The evidence introduced by the plaintiff, bearing upon the matter of the existence of sterile, slick land on the 80-acre tract, squarely conflicts with the evidence introduced by the defendant, bearing on that matter.

The defendant in rebuttal introduced evidence tending to show that the land while in defendant's possession had been leveled, plowed, seeded and irrigated in a proper, farmer-like manner, and still failed to produce crops; that the land had not been unreasonably pastured and thereby been damaged.

Considerable testimony was introduced in the case tending to show the value of land in the vicinity. The witnesses fixed as the value of good productive land in that vicinity, during the year 1913, from $100 per acre to $135 per acre. One witness testified that such land was worth $150 per acre. The plaintiff testified that this particular tract of land in his judgment was worth $110 per acre. The various witnesses estimated the value of this land by the prices paid for other land in the vicinity at the time in question. All of the wit-

nesses agreed that slick land, when it actually occurs, is absolutely worthless for the purpose of farming.

Such is a brief summary of the evidence before the jury at the close of the testimony.

The court instructed the jury satisfactorily to the parties with regard to the controverted matters of fact. At least, no assignment of error is based upon such controverted matters.

The court instructed the jury regarding the alleged false and fraudulent representations of the quality of the land and their duty in respect to such matters. Thereupon the court gave the following instruction, of which appellant has not complained:

"If you believe from all of the evidence the alleged representations were made by Wooley to Locarnini; that the same were false when made, and were such representations as a man of ordinary prudence would rely upon; that Wooley knew them to be false; that the defendant, Locarnini, did in fact rely upon the representations, and was thereby induced to purchase the land from Wooley, and has been damaged thereby, then the defendant should be allowed such damages as he may have suffered."

The court followed with an instruction applying the same rule in case the jury believed that Wooley had no knowledge of the facts represented by him, but claimed to know the facts. This was followed by an instruction to the effect that the proof of the falsity of a material representation made with knowledge of the falsity, and with the intent to deceive the defendant, and that defendant was actually deceived thereby to his damage, justifies a recovery by the defendant. Thereupon the court instructed the jury as follows, of which complaint is made:

"(1) If you find the defendant has been damaged, you should allow him as damages that sum which will represent the difference between the purchase price of the land and what it is actually worth; for example, if you find from the evidence (Wooley) represented there was no hard spots or slick land on the place, and you find all the other facts necessary to entitle the defendant to an award of damages, as explained in these instructions, you should allow the defendant the difference between the value of the land purchased

and the purchase price of $110 an acre, and what such land is worth with hard spots or slick spots thereon.

"(2) If you find the defendant has suffered damages, then you will deduct from the amount of his damages the amount of the plaintiff's note and the interest thereon and sums due him on his open accounts, and return a verdict for defendant for the balance of amount."

The first quoted paragraph is said to be " . . . erroneous, for the reason that it does not state a correct measure of damages and form a proper basis for a consideration of the evidence by the jury. The correct measure of damages in cases of this kind is the difference between the value of the land at the time of purchase, if it had been as it was represented and its actual value at that time."

This contention cannot be allowed, for two reasons: First, because the plaintiff neglected at the proper time to request a proper instruction setting forth the true rule of the measure of damages as he understands that rule; and, second, because the plaintiff alleged in his reply to defendant's counterclaim:

" . . . That said land sold by plaintiff to defendant was, at the time of said sale, in every respect, of the quality and in the condition in which the same was represented by plaintiff to be, and that the same was of the value paid therefor by defendant."

The plaintiff is thereby precluded from contending that the price paid for the land was other than the actual value of the land at the time of the sale, and the actual value if it was as represented. Whether the land was of a value less than the purchase price was the issue on trial. If found to be of a less value, then the measure of damages was the difference between the actual value as found and the actual value it was represented to be as represented by the purchase price paid for the land. This is the rule the jury were instructed to follow, and is the correct rule of damages under the pleadings in this case.

An examination of the verdict of the jury will disclose, however, that the damages found for the defendant are not measured by the rule as given by the court. Under the evidence, the plaintiff attempted to show that the land was worth $110, and was cheap at that price. Other witnesses testified that land in the vicinity, in 1913, sold at prices ranging from

$100 to $135 per acre. We have above mentioned the evidence fixing the amount of sterile land in the tract from nothing to as much as 30 acres. The jury evidently believed that the tract contained some sterile land. They evidently believed that the reason the spots in the land do not produce crops is that such spots are sterile spots as claimed by the defendant; that the amount in the aggregate of such spots is 15 acres. The plaintiff conditionally estimates the barren spots on the land at 15 acres. The jury were fully justified in finding, if they did find, that the barren spots are sterile, worthless land, and such land amounts in the aggregate to 15 acres.

Assuming that the jury so found as a fact that 15 acres are worthless, then, following the rule they were instructed by the court to follow, in measuring the damages, viz., to find the difference between the purchase price, $8,800 and what it is actually worth, they evidently found that 15 acres are admittedly worthless. Then the land was actually worth $8,800, less the purchase price of 15 acres, viz., $1,650, the amount of the damages under the rule given.

The rule contended for by the appellant, viz., to find the difference between the value of the land at the time of purchase, if it had been as it was represented, and its actual value at that time, if applied, would bring what result? The plaintiff having alleged that the land was actually worth the price paid for it, $8,800, such is the value of the land at the time of purchase if it had been as it was represented. What was its actual value at that time? Assuming that the jury found that 15 acres of the land were worthless, then the value of the 65 remaining acres of land is as it was represented to be, and worth the amount of $110 per acre paid for it because plaintiff alleges the land was of that value. Consequently, the 65 acres of land was actually worth $7,150. The difference between the value of the land at the time of the purchase, if it had been as it was represented to be, that is, the difference between $8,800 and its actual value at the time, viz., $7,150, is the sum of $1,650, the identical amount of damages produced from the rule given by the court, because the pleadings of the plaintiff fix the actual value of the land at the purchase price, and the court by its rule fixes the same sum, not as the actual value of the land, but as

the purchase price paid for the land, which is the same thing. Consequently, the effect of the rule given, and the rule contended for by appellant, is identical upon the same assumed facts, under plaintiff's pleadings and evidence of value.

Either rule followed by the jury, after finding the amount of the sterile worthless land to be 15 acres would have produced a verdict for the defendant of $1,650 as his damages. But the jury evidently followed neither rule, for the reason they found the defendant was damaged in the sum of $1,286. In order to have reached this exact sum, and also to have found that 15 acres of the land were worthless, they evidently found that land of the character this land was represented to be in the vicinity where this land is located was actually worth more than $110 per acre; that such land was actually worth $115.60 per acre as some of the witnesses testified; consequently that 65 acres of land was of the character as represented, and was therefore worth $115.60 per acre, or $7,514; that the 15 acres of land was worthless, but that defendant was not injured to the full extent of the sum he actually paid for the 15 worthless acres of land, but that he was injured in a sum equal to the difference between the amount he paid for the whole tract, having bought at a bargain, and the sum the land which was of the character it was represented to be was actually worth at the time, or a difference between $8,800, the purchase price paid, and $7,514, the actual value of the land at the time, viz., $1,286. Hence the jury found that the actual value of land in the vicinity of this land, of the quality the plaintiff represented it to be, was actually worth more than the purchase price agreed upon by the parties, and actually worth more than plaintiff contended for it. And because defendant did not pay the full worth for 65 acres of such land, his injury by reason of paying $110 per acre for 15 acres of worthless land only amounted to the difference between the sum he paid less than the actual value of the 65 acres of the character of land represented to him he was buying and the price paid for the worthless land. In other words, he paid $1,650 for 15 acres of worthless land. He paid $7,150 for 65 acres of land worth $7,514. Hence he paid $364 less for the 65 acres of land than such land was actually worth. Therefore he was benefited in that respect

to the amount of $364, and damaged to the amount of $1,650, by reason of the worthless 15 acres of land. He suffered actual damages, to the amount equal to the difference between the sum he was injured, viz., $1,650, and the sum he was benefited, viz., $364, or in the sum of $1,286.

Thereby a rule is followed by which the jury ascertained the difference between the actual value of the land at the time of the sale and the value of the land had it been as it was represented to be, which not only ignores the court's instructions and the plaintiff's allegations of value, but is the rule that is approved, and here insisted upon, by the appellant, notwithstanding the allegations of his reply, which would have made the strict application of the rule to his disadvantage.

I can find no injury resulting from an instruction given which was not followed by the jury. And the jury evidently did not follow the instruction the court gave in this respect, but did follow a rule in measuring the damages which was just and equitable both to the plaintiff and the defendant and gave neither the benefit of a bargain. The instruction complained of is without injury to the appellant's right, and was therefore harmless.

The second paragraph of the instruction, quoted, is complained of as prejudicial, "for the reason that it is a direct charge to the jury to find some sum for the defendant in excess of the amount admitted to be owing to the plaintiff in the event the jury should find that the defendant had suffered any damages whatsoever." The language of the instruction permits of such an understanding of its meaning. The language used is as follows:

"If you find the defendant has suffered damages, then you will deduct from the amount of his damages, the amount of the plaintiff's note, and the interest thereon and sums due him on his open accounts, and return a verdict for defendant for the balance of amount."

The verdict of the jury on its face especially sets forth that the jury finds that the defendant has been damaged in the sum of $1,286, from which sum the jury deducts $1,171 as the total amount of the plaintiff's claim. How could such instruction, here complained of, conceding that it is erroneous, have resulted to appellant's prejudice, when the face

of the verdict gives to the plaintiff credit against the damages found for the defendant, to the full amount claimed by the plaintiff, and $1 additional? If a reversal of the judgment should be ordered in such circumstances, such reversal would be granted because of a clear technical error, which on its face actually wrought no injury. Reversals for such reasons should not be granted as of right, and this court ought not grant a reversal in such case for the further reason the Constitution prohibits the reversal of a judgment for technical errors in pleadings and proceedings when upon the whole case justice has been done. Such appears to be the situation presented by this record.

Other alleged errors are assigned, but upon consideration no reversible error appears in the record, for which reason a discussion is of no benefit and will be omitted.

I find no reversible error in the record.

The judgment is affirmed.

FRANKLIN, C. J., and ROSS, J., concur in the judgment.