[Civil No. 1817.   Filed July 5, 1921.]

[199 Pac. 124.]

## SOUTHWEST COTTON COMPANY, a Corporation, Appellant, v. JAMES RYAN, Appellee.

1. NEW TRIAL—AFFIDAVIT OF JUROR INCOMPETENT TO IMPEACH VERDICT.—The affidavit of a juror in a civil action cannot be received as evidence of the alleged misconduct of jury to impeach the verdict.

2. NEW TRIAL—FACT THAT JUROR DID NOT SIGN VERDICT DOES NOT PERMIT HIM TO IMPEACH IT.—The fact that a juror did not sign the verdict rendered by the jury of which he was a member does

not make him any less a member of the jury or entitle him to impeach the verdict by an affidavit of misconduct.

3. TRIAL—IT IS ERRONEOUS TO INSTRUCT ON CONTRIBUTORY NEGLIGENCE NOT PLEADED BY DEFENDANT.—In an action by an injured employee to recover under the state Employers' Liability Law, it is error to give an instruction on contributory negligence of the employee where that issue was not raised by defendant.

4. APPEAL AND ERROR — PARTY REQUESTING INSTRUCTION ON ISSUE CANNOT COMPLAIN THAT COURT INSTRUCTED ON THAT ISSUE.—Where defendant requested the court to give an instruction on issue of contributory negligence, he cannot on appeal complain that the court gave an instruction on that issue which was correct.

5. APPEAL AND ERROR—FACT THAT BOTH PARTIES REQUESTED CHARGE ON UNPLEADED ISSUE DOES NOT ENTITLE EITHER TO ASSIGN IT AS ERROR.—Where the defendant, though he had not pleaded contributory negligence, requested a charge on that issue, the fact that plaintiff also requested a charge on the same issue does not entitle defendant to complain on appeal that the court gave a charge on contributory negligence.

6. PLEADING—ANSWER HELD NOT TO ADMIT FACTS SHOWING ACCIDENT AROSE OUT OF EMPLOYMENT.—In an action under the Employers' Liability Law, an answer admitting the employment, its hazardous character, and the suffering of the injury while engaged in such employment, and that plaintiff was injured by reason of his right hand being caught in a machine, did not admit facts showing that the injury arose in the course of the employment, since the expression "being caught" could include the occurrence of the accident as a result of plaintiff's own negligence or willful act as well as a result of his employment.

7. TRIAL—ERRONEOUS REFUSAL TO DIRECT VERDICT AT CLOSE OF PLAINTIFF'S TESTIMONY IS WAIVED BY DEFENDANT'S EVIDENCE.—The trial court's error in refusing a directed verdict for defendant at the close of plaintiff's testimony because the plaintiff had not proved his injury arose in the course of his employment was waived by defendant thereafter proceeding with the trial and offering evidence.

8. TRIAL—ON MOTION TO DIRECT VERDICT AT CLOSE, EVIDENCE OF BOTH PARTIES CONSIDERED.—Where motion to direct verdict is renewed at close of all the evidence, it is the duty of court to consider evidence of both parties.

9. MASTER AND SERVANT—SERVANT MUST NEGATIVE CONTRIBUTORY NEGLIGENCE.—Under Civil Code of 1913, paragraph 3154, authorizing recovery for injury to an employee in all cases in which it was

9. On necessity as to alleging freedom from contributory negligence, see notes in 15 Ann. Cas. 433; Ann. Cas. 1913B, 845; 33 L. R. A. (N. S.) 1152, 1201.

not caused by the negligence of the employee, a servant seeking to enforce the liability of his employer thereby created must allege and prove that the injury was not caused by his negligence.

10. EVIDENCE—PLAINTIFF MUST PROVE NEGATIVE ESSENTIAL TO HIS CAUSE OF ACTION.—Where the existence of a negative is essential to plaintiff's cause of action, the burden is on him to prove such negative unless the facts rest within the knowledge of the opposite party.

11. MASTER AND SERVANT — ALLEGING DUE CARE DOES NOT AFFECT BURDEN OF PROOF.—An injured servant cannot avoid the burden placed on him of proving that the accident was not caused by his own negligence by alleging, instead of the negative statement that he was not negligent, the affirmative statement that he was exercising due care.

12. EVIDENCE—BURDEN OF PROOF ON SAME ISSUE NEVER SHIFTS.—The burden of proof on the same issue never shifts, but always remains on the party having the affirmative of that issue to maintain.

13. TRIAL—COURT MUST INSTRUCT ON MEASURE OF DAMAGES, THOUGH NOT REQUESTED TO DO SO.—In an action for injuries to a servant, where the pleadings raised the issue of the damages sustained by plaintiff, it was error for the trial court to fail to instruct on the measure of damages, though neither party made any requests for such instruction, in view of Civil Code of 1913, paragraphs 514, 515, requiring the court to declare the law arising on the points.

14. TRIAL — STATUTE PERMITTING REQUESTS FOR INSTRUCTIONS IMPLIEDLY REQUIRES INSTRUCTIONS ON ISSUES WITHOUT REQUEST.— Civil Code of 1913, paragraph 516, providing that either party may request such instructions as he desires, thereby permitting, but not requiring, the parties to make such requests, sustains the construction of the two preceding sections as requiring the court to instruct on all issues, even though not requested.

15. APPEAL AND ERROR—REQUEST IS ESSENTIAL TO REVERSAL FOR FAILURE TO GIVE FULLER INSTRUCTION AFTER CORRECT INSTRUCTION.— Where the court has given a correct instruction on an issue, a party cannot complain that the jury should have been instructed on that issue with greater particularity unless he requested a fuller instruction.

APPEAL from a judgment of the Superior Court of the County of Maricopa. F. H. Lyman, Judge. Reversed and remanded.

Mr. G. P. Nevitt, for Appellant.

Mr. W. L. Barnum and Mr. F. C. Struckmeyer, for Appellee.

McALISTER, J.—Action for damages under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162). From a judgment in favor of plaintiff for $3,000, the Southwest Cotton Company, a corporation, defendant, appeals.

It appears from the complaint that on April 13, 1918, while appellee, James Ryan, was engaged in the performance of his duties as an employee of the appellant company in a certain planing-mill owned by it, wherein mechanical power, to wit, a gasoline motor was used to operate machinery, he was injured by an accident arising out of, and in the course of, his employment and due to a condition or conditions of such occupation and employment, which accident occurred in substantially the following manner:

"The plaintiff, while working on a planer or jointer in said mill, engaged in the labor and service of his employment, to wit, as a jointer, while then and there in the exercise of due care for his own safety, was injured by said machine, to wit, said jointer, the right hand of the plaintiff being caught in said jointer, severing part of the thumb and forefinger of said right hand, rendering said right hand permanently crippled and maimed."

After demurring, appellant answered, further admitting the employment, its hazardous character, and that the injuries were suffered by appellee by reason of an accident occurring while he was engaged in such employment in the manner following:

"That the plaintiff while working on the planer or jointer in the said sawmill, or planing-mill, and while engaged in the labor and service of his employment, was injured by the jointer of the said machine by reason of the right hand of the plaintiff being caught in

the said jointer and severing a part of the thumb and a portion of the forefinger of the said right hand.''

It denies that the accident or injury arose out of, and in the course of, such employment, that it was due to a condition or conditions of such occupation or employment, and that the appellee was at the time thereof exercising due care and caution for his own safety, but alleges that it resulted solely from his own negligence and carelessness in placing or permitting his right hand to come in contact with the jointer of the planing-mill.

A number of errors are assigned, but a part of them are withdrawn specifically in the reply brief, while those it becomes necessary to discuss fall naturally under one or another of only a few propositions advanced by appellant. A motion for a new trial was made upon the ground that the verdict was reached by chance, and in its support there was filed the affidavit of W. J. Criswell, one of the twelve jurors who sat in the case, which, however, on motion of appellee, was stricken from the files. This ruling, together with the denial of the motion for a new trial, is assigned as error. The substance of the affidavit is that the jury, after deliberating and taking several ballots without reaching a verdict, ''agreed by and between each of the jurors that each juryman would place on a slip of paper the amount of damages he thought the plaintiff should recover, and the amount which each juryman placed on his ballot would be added together and divided by twelve (that being the number of jurors), and the quotient derived would be the amount of the verdict the jury would render in favor of the plaintiff and the plaintiff's damages would be assessed at the amount of the quotient so obtained.'' According to the affidavit the verdict of $3,000 returned by the jury was arrived at in pursuance of this agreement.

This court held adversely to appellant's contention in the well-considered case of *Hull* v. *Larson*, 14 Ariz. 492, Ann. Cas. 1915C, 1145, 131 Pac. 668, wherein it was decided that the affidavit of a juror in a civil action could not be received as evidence of the alleged misconduct of a jury.

It is urged, however, that inasmuch as the record discloses that the verdict is signed by only ten of the twelve jurors, and that Criswell is not one of the ten, it is not his verdict, and therefore the rule that a juror is not allowed to impeach his own verdict has no application. It may be that it is not the verdict Criswell wanted to render, but it is none the less the verdict of the jury of which he was a member. Twelve men constitute a legal jury, and the fact that nine, ten, or eleven of them may reach a result representing the whole body does not render those failing to agree any the less jurors and just as necessary to a final disposition of the case as those who signed the verdict. They have gained their information by reason of membership on the jury and have taken part in all of its deliberations, the same as those who agreed to the verdict. There can be no reason why such a principle as this, based as it is largely upon public policy, should not apply to each member of the jury, whether he agreed to the verdict or not. The order striking the affidavit from the files was correct, and, inasmuch as there was no other evidence of the alleged misconduct of the jury in returning a "quotient verdict," the denial of the motion for a new trial based thereon was proper.

Both appellant and appellee requested an instruction on contributory negligence. They were worded somewhat differently, but in effect were the same. The court gave the one requested by appellee, and appellant now assigns error upon the giving of any instruction on this subject upon the ground that con-

tributory negligence is not pleaded in the defendant's answer. It is not claimed that appellant's proffered instruction should have been given instead of appellee's, but that there was nothing in the record justifying the giving of either, since the defendant had not made contributory negligence an issue. He cites in substantiation of his position the two recent decisions of this court. *Consolidated Arizona Smelting Co.* v. *Gonzales,* 21 Ariz. 628, 193 Pac. 304, and *Inspiration Consolidated Copper Co.* v. *Taylor,* 21 Ariz. 632, 193 Pac. 305, wherein it is specifically held that it is error to instruct on contributory negligence when it has not been raised by the defendant.

There can be no question but that under these authorities it was error to give the instruction, but is appellant in a position to claim the benefit of it? This court, in the case of *Sisson* v. *State,* 16 Ariz. 170, 141 Pac. 713, refused to reverse a case upon the giving of an erroneous instruction at the request of the defendant, and in so doing used the following language:

"The policy of reversing cases at the instance of a defendant in a criminal cause because of error occurring by his invitation and request would, indeed, be unwise, for it must readily occur to anyone that the pursuit of such a course could not be fraught otherwise than with most mischievous consequences in the administration of the law. A party by clever and ingenious argument might in the hurry of a trial persuade a court to give an instruction which, upon a critical examination, would be found not good in point of law. The court should, of course, refuse to give an erroneous instruction, but, if one such is given, the party urging it may not be heard in this court to decry a result fashioned by his own handiwork. The toleration of such a procedure would tend often, perhaps, to encourage parties to strive in an endeavor to catch the court, and thus predicate a foundation for reversible error."

The reasons for the holding apply just as strongly in a civil cause. There is, of course, in this case no question of the sincerity of both appellant and appellee in requesting the instruction; for at that time it had not been decided that it was error to instruct on contributory negligence unless it had made an issue by the answer, though it was none the less the law. It is not thought for a moment that either request was prompted by a desire to lead the court into error, but it is apparent from the reasoning of Justice FRANKLIN that there might be instances in which counsel would not be governed by the proper motives, and to establish, therefore, a precedent fraught with such mischievous possibilities would be dangerous. Appellant cannot complain of an error which he has invited. The fact that appellee also made the request cannot aid appellant, because an erroneous instruction requested by both sides would more likely lead to its being given than if it were asked by only one.

It is urged that it was error to refuse to direct a verdict for appellant at the close of appellee's case. The motion was made upon the ground of a total failure of proof. Appellee had introduced no evidence, nor offered any, in support of his allegations that the accident causing the injury arose out of, and in the course of, his employment, was due to a condition or conditions of such employment, and occurred while he was in the exercise of due care for his own safety. These allegations the answer specifically denies, but appellee, acting upon the theory that it admits them as a necessary conclusion from its admission of the primary facts and circumstances surrounding the accident, rested his case without offering any evidence whatever in their support. The only fact admitted, in addition to the employment, its hazardous character, and the suffering of the injury while engaged

in such employment, is that appellee "was injured by the joiner of the said machine by reason of the right hand of the plaintiff being caught in said joiner and severing a part of the thumb and a portion of the forefinger of the said right hand." Stress is placed on the words "being caught." The allegation of the complaint and the admission of the answer containing them are identical, "the right hand of plaintiff being caught in said joiner." The complaint alleges that it was caught while "in the exercise of due care for his own safety," but the answer denies this specifically, and alleges affirmatively that it was caught as a result of his own negligence in placing it where his fingers came in contact with the joiner. Before the words "the hand of plaintiff being caught" and their context may be construed as an admission that the accident was due to a condition or conditions of the employment, the manner in which the hand was caught must appear with such particularity that such conclusion is necessarily drawn therefrom, without the necessity of supplementing their meaning by a consideration of the allegation that appellee was at the time in the exercise of due care for his own safety, because the latter, being denied, cannot be considered in determining what is admitted. Can it be said from the facts alleged that appellee's hand was not caught in the joiner as a result of his carelessly and unnecessarily placing it too close? The primary facts alone do not lead to such a conclusion, for it might very well be that his hand was caught in the joiner, and also be that he carelessly placed it where its being so caught was inevitable. Neither the words "being caught" themselves nor the language in connection with which they are used disclose why or how it happened to be where it was caught. The use of the passive voice of the participle, "being caught," in admitting the injury, as it was used in the complaint,

upon which emphasis is placed by appellee, does not preclude negligence any more than the use of the active voice, ''the plaintiff caught his hand,'' for it is impossible that his hand ''could have been caught,'' or that he ''could have caught'' his hand, in the jointer, without some positive action on his part immediately prior to the severing of his fingers. If the hand were willfuly placed where it came in contact with the jointer, certainly the accident was not due to a condition or conditions of the employment, and, if it were there by reason of appellee's own negligence, the same result follows. It would seem to be clear, therefore, that appellant not only did not intend to admit that the accident was due to a condition or conditions of the employment, but that it did not do so either directly or as a necessary conclusion from the facts it did admit. His motion for an instructed verdict was proper and timely, and should have been granted.

Appellant, however, waived the error by not resting when the ruling was made and refusing to offer any evidence instead of proceeding with the trial. *Grand Trunk Ry. Co.* v. *Cummings,* 106 U. S. 700, 27 L. Ed. 266, 1 Sup. Ct. Rep. 493; *Bernheimer* v. *Becker,* 102 Md. 250, 111 Am. St. Rep. 356, 3 L. R. A. (N. S.) 221, 62 Atl. 526; *Detroit United R. R. Co.* v. *Nichols,* 165 Fed. 289, 91 C. C. A. 257; *Mack* v. *Parkieser,* 53 Neb. 528, 74 N. W. 38; *Wild* v. *Boston & M. R. R.,* 171 Mass. 245, 50 N. E. 533; *Langan* v. *Enos Fire Escape Co.,* 233 Ill. 308, 84 N. E. 267; *Thompson* v. *Avery,* 11 Utah, 214, 39 Pac. 829; *Lynch* v. *Johnson,* 109 Mich. 640, 67 N. W. 908; 38 Cyc. 1590, and numerous cases there cited.

The motion could have been renewed at the close of the testimony, but in such instance it would have been the duty of the court in passing on it to consider the

whole evidence, that introduced originally by appellee and that introduced subsequently by either party, and in case the defect had been cured the motion should then have been properly denied. 38 Cyc. 1591; *Detroit United Ry.* v. *Nichols,* 165 Fed. 289, 91 C. C. A. 257; *Esler* v. *Camden & S. Ry. Co.,* 71 N. J. L. 180, 58 Atl. 113; *Travelers' Ins. Co.* v. *Randolph,* 78 Fed. 754, 24 C. C. A. 305.

It follows necessarily from what we have just said that the court was not justified in giving the following instruction, upon which one of the assignments is based:

"It is furthermore alleged by the plaintiff that, while engaged in said employment, he suffered severe personal injuries by an accident arising out of, and in the course of, such employment and due to a condition or conditions of such occupation and employment. And it is alleged that, while working on the planer or jointer in said mill, engaged in the labor and service of his employment, to wit, as the jointer, he was injured by said machine, viz., such said jointer.

"These allegations of the plaintiff are admitted by the defendant in its pleadings."

The complaint sets forth the allegations required in an action under the Employers' Liability Law, and the answer admits specifically three of them, the relation of employer and employee, the hazardous character of the employment, and that the injury was suffered while engaged in such employment, but, as before stated, denies that the accident was due to a condition or conditions of the employment, and that the appellee was at the time in the exercise of due care for his own safety. The objection to this instruction is that it tells the jury that the defendant admits an allegation which is specifically denied, but in justifying its submission appellee argues that the admission of the primary facts and circumstances surrounding the accident is an admission that the accident was due

to a condition or conditions of the employment. In disposing of the preceding assignment of error we have shown that this argument is not tenable under the allegations of the complaint. If the construction placed on the admissions of the answer by the court as evidenced by this instruction be correct, there was no issue to be submitted to the jury other than the amount of the damage, because there could be no question as to defendant's liability if the answer admitted, even impliedly, in addition to the three specific allegations just mentioned, that the accident arose out of, and in the course of, the employment and was due to a condition or conditions of such employment. There could then be no purpose in defendant's alleging or attempting to prove that the injury was caused by the plaintiff's own negligence, for it could not be due to both; the one excludes the other. The effect of the instruction was to deny the defendant the right to have the jury pass on the only controverted issue in the case other than the question of the amount of damage.

Assignments 5, 6, and 7 deal altogether with the instructions on the burden of proof. No. 5, which is typical, reads as follows:

"The defendant, however, by setting up what is called an affirmative defense, that is, by saying that this injury was due to the carelessness, or what is called the negligence of the plaintiff himself, takes upon itself the burden of proving that, and before you can find that the plaintiff was negligent, was careless, it must appear so by the evidence by a preponderance of the evidence, no presumption arising that the plaintiff was negligent, but such negligence, if it appears at all, must appear by a preponderance of the evidence."

Paragraph 3154, Revised Statutes of 1913, reads as follows:

"That to protect the safety of employees in all hazardous occupations in mining, smelting, manufacturing, railroad, or street railway transportation, or any other industry, as provided in said section 7 of article XVIII of the state Constitution, any employer, whether individual, association, or corporation, shall be liable for the death or injury, caused by any accident due to a condition or conditions of such occupation, of any employee in the service of such employer in such hazardous occupation, in all cases in which such death or injury of such employee shall not have been caused by the negligence of the employee killed or injured."

This paragraph points out the facts which render an employer liable under the Employers' Liability Law, and they are repeated in paragraph 3158, which designates the parties plaintiff in a suit authorized by its provisions. To plead a good cause of action thereunder it is necessary to allege five things, to wit: First, the relation of employer and employee; second, the hazardous character of the employment; third, an injury caused by an accident while engaged in such employment; fourth, that the accident was due to a condition or conditions of the occupation or employment; and, fifth, that the injury was not caused by the negligence of the plaintiff. This appears very clearly from the language of the court in the case of *Calumet & Arizona Min. Co.* v. *Chambers*, 20 Ariz. 54, 176 Pac. 839:

"The plaintiff, in order to recover under the Employers' Liability Law, is required to allege in his complaint and sustain by evidence that he was employed by the defendant in an occupation declared hazardous, and while engaged in the performance of the duties required of him was injured, and the injury was caused by an accident due to a condition or conditions of such employment, and was not caused by the negligence of plaintiff."

Practically the same language is used in *Superior & Pittsburg Copper Co.* v. *Tomich,* 19 Ariz. 182, 165

Pac. 1101, 1185. It will be observed both from the statute itself and this construction of it that one of the necessary allegations in an action of this character is that the injury complained of was not caused by the negligence of the employee himself. The complaint complies with this requirement by alleging affirmatively that at the time of the injury the plaintiff was in the exercise of due care for his own safety rather than by stating it negatively, in the language of the statute, that the injury was not caused by his own negligence. The answer, however, denies that the plaintiff at that time was in the exercise of due care for his own safety, and states affirmatively that the injury was due solely to his own negligence. In this state of the record, did the plaintiff have the burden of proof on his allegation of the exercise of due care at the time of the injury, or was he relieved of it because of defendant's denial of due care supplemented by an affirmative allegation of plaintiff's negligence?

From an examination of the authorities it seems to be clear that, when a party's contention requires proof of a negative fact, he has the burden of proving that fact unless it is a matter peculiarly within the knowledge of the adverse party; to hold otherwise would mean the enforcement of rights of which a negative forms an essential part without proof.

"Whenever the establishment of an affirmative case requires proof of a material negative allegation, the party who makes such allegation has the burden of proving it, especially where the most appropriate mode of proof is by establishing the affirmative opposite of the allegation." 22 C. J. 70.

In *Western Union Tel. Co.* v. *Brazier,* 10 Ala. App. 308, 65 South. 95, the Supreme Court of Alabama uses this language:

"Just how far and to what extent a person asserting a claim or defense resting upon a negative allegation, who has the primary duty of producing some evidence to make or meet a *prima facie* case, may have the burden of proof—meaning the burden of evidence—cast upon him, must of necessity rest upon no fixed rule, but be determined with reference to the facts of the particular case. Unless falling within some exception to the rule, it is well settled that whoever grounds a claim or asserts a defense which depends upon a negative must, as in other cases, establish the truth of the asseveration by a preponderance of the evidence, and the one asserting such claim or defense is not relieved of the *onus probandi* merely by reason of the form of the allegation or the inconvenience of proving a negative."

In *Goodwin* v. *Smith,* 72 Ind. 113, 37 Am. Rep. 144, the Supreme Court of Indiana says:

"The general rule, deducible from the authorities, may be thus stated: Whoever asserts a right dependent for its existence upon a negative must establish the truth of the negative by a preponderance of the evidence. This must be the rule, or it must follow that rights of which a negative forms an essential element may be enforced without proof. This conclusion would be illogical and unjust, and we are therefore authorized to infer the truth of its converse. Confusion has arisen from statements loosely made by text-writers, and sometimes by courts; but it will be found upon examination that, wherever the question has been directly presented and considered with care, it has been uniformly held that, wherever the petitioner's right depends upon the truth of a negative, upon him is cast the *onus probandi,* except in cases where the matter is peculiarly within the knowledge of the adverse party."

The facts relating to the accident were perhaps better known by the plaintiff than anyone else, for he was in a position to see and appreciate all the circumstances. No other person, unless it be his own witness, George A. Tyler, who was within four feet of

him at the time of the accident, was in a position to know so well as he whether the injury was caused by his own negligence. The injury was not of such a character as to cause him to lose at the time any of his faculties. Neither can the responsibility placed on the plaintiff by the statute creating his cause of action, to show that his injury was not caused by his own negligence, be avoided by his alleging the converse of negligence, namely, the exercise of due care, for, as said in *Western Union Tel. Co.* v. *Brazier, supra,* the one asserting such claims "is not relieved of the *onus probandi* merely by reason of the form of the allegation." There is but one proposition, one issue, involved, to wit, the negligence of the plaintiff as the cause of the injury, and, whether it be stated negatively or affirmatively, it is clear that as to it the plaintiff had the burden of proof. This can be met in one form as well as the other, for the negative allegation, that the injury was not caused by plaintiff's own negligence, is shown by proof of the affirmative, that he was at the time in the exercise of due care. In commenting on the decision of the Supreme Court of Indiana in *Goodwin* v. *Smith, supra,* 22 Corpus Juris, 71, in note 60, says:

"An applicant for liquor license has the burden of proving that he is 'not in the habit of becoming intoxicated' in the language of the statute prohibiting such persons from receiving a license, 'for, by proving the converse, that the applicant is a man of habitual temperance in the use of intoxicating liquors, the negative is established.' "

The burden of proof on the same issue never shifts and is always on the party having the affirmative to maintain. 22 C. J. 69. When the plaintiff, following the statute and rulings of this court, accepted the burden as to its affirmative allegation of the exercise of due care, there was left on this issue no burden for

the defendant to assume, for there can be but one burden of proof on the same issue. If the affirmative defense be new matter, pleaded by way of confession and avoidance, undoubtedly the defendant would have the burden as to it; but merely supplementing the denial of appellee's affirmative allegation of the exercise of due care by pleading affirmatively its converse raises no new issue.

To hold that it is the duty of the plaintiff in an action under the Employers' Liability Law to assume the burden of proof on the allegation that the injury was not caused by his own negligence, where the facts were not peculiarly within the knowledge of the defendant, does not increase the burden he is already carrying and gives effect to the statute. It is not questioned that he must allege and prove that the accident was due to a condition or conditions of the occupation or employment, and this can only be done by showing the facts out of which the accident arose. When, therefore, such allegation is established by the facts in evidence, it is also established as a necessary conclusion therefrom that the injury was not due to the negligence of the plaintiff; for proof that it was due to a condition of the employment obviously excludes the idea of his sole negligence as the cause. An accident cannot be due at one and the same time to a condition or conditions of the employment which permits recovery and to the sole negligence of the employee which defeats it.

An instruction on the measure of damages was not requested by either party, and none given by the court. The only reference to the amount of damages is at the end of the charge, where the jury is told that, if it find for the plaintiff, the form of its verdict will be, "We do find for the plaintiff and fix his damages at the sum of $——." A limitation of $5,000, the amount sued for, is not enjoined. The question

raised by appellant's assignment on this omission by the court is whether it is the duty of the court of its own motion to instruct on the measure of damages, regardless of a request from either side. Appellant argues very forcibly that on all vital issues—like, for instance, the measure of damages in a personal injury suit—the court has this duty to perform, while appellee's position is that the failure to instruct is not error unless an instruction on the subject was requested and submitted. The sections of the statute of 1913 bearing upon this question follow:

"514. After the evidence is closed and before the commencement of the argument, the court shall charge the jury. The charge shall be taken down by the court reporter, and at the request of either party shall be written out, signed by the judge, and filed with the clerk. If the court reporter be not present the charge shall be in writing, unless waived, and signed by the judge.

"515. The court shall not charge the jury with respect to matters of fact, nor comment thereon, or upon the weight of the evidence, but shall declare the law arising on the points, and the charge shall submit all controverted questions of fact solely to the decision of the jury.

"516. Either party may, before the charge is given, present to the court, in writing, such instructions as he desires to have given to the jury, and for this purpose a reasonable time therefor shall be given; the court shall pass on the same, and either give or refuse the same as asked, or modify the same to conform to the court's view of the law, plainly indicating the modifications made, and give the same as modified. If given, the judge shall, on the margin of each instruction, write the word 'given' in ink, and sign his name thereto in ink; and if refused, he shall, in like manner, write the word 'refused,' and sign his name thereto. If given as modified, he shall in like manner write the words 'given as modified,' and sign his name thereto in ink."

It will be observed that paragraph 514 says that "the court shall charge the jury." The word "shall," as here used, places this duty on the court, and it is not conditioned upon a request from either party to the litigation. It is a step in a jury trial which the court must perform whether aided by the attorneys or not. The court could not read a dissertation on the law generally, without reference to the issues of the case in hand, and discharge its duty in this regard; for, when the statute says that the court shall "charge the jury," it means that it shall be done in the manner the term implies. What is that? Paragraph 515, above, provides that the court, in charging the jury, "shall declare the law on the points." In Corpus Juris, volume 11, page 295, the term is defined as:

"Stating the precise principles of law applicable to the case immediately in question."

Bouvier's Law Dictionary states it thus:

"The exposition by the court to the petit jury of those principles of the law which the latter are to apply in order to render such a verdict as will, in the state of facts proved at the trial to exist, establish the legal rights of the parties to the suit."

One of the "points" in this case is the amount of damages and the "principles of law applicable" to it are not "declared." The plaintiff had alleged damages in the sum of $5,000, and the defendant had denied it in any amount. After deciding that the defendant was liable, the jury had next to say to what extent, and in determining this there are certain "principles of law" by which it should have been guided, and without its being informed what they are we have no way of knowing whether the verdict was arrived at by their application or not, and certainly we are not justified in presuming that the jury correctly

performed this function of the court. The charge should have told the jury how to measure the damages, what elements entered into the question, for there is no other way by which it could have known this and without such knowledge it was as though a "roving commission" had been issued to it to establish its own standard of damages instead of following those fixed by the law itself. A consideration of the elements of damage having no rightful place in its deliberations may have guided the jury, at least in part, in reaching its verdict, and under the statute requiring the court to charge the jury—that is, "declare" the "principles of law applicable" to the "points"—its duty to make clear these principles as a means of preventing an unfair advantage of this kind is manifest, and this regardless of any request from either side. To hold otherwise would do violence to the provisions of paragraph 514, above.

This view is confirmed by a consideration of paragraph 516, above, which permits, without requiring, either party to present to the court in writing such instructions as he desires to have given the jury. If it had been the purpose of the law-making power to relieve the court from declaring the principles of law applicable to the points only when required by the parties, it doubtless would have spoken in stronger than merely permissive terms of the duty of the parties in this respect.

In the recent case of *Curry* v. *Windsor, ante,* p. 108, 194 Pac. 958, this court used the following language:  ·

"The trial judge failed to give the jury any instructions upon damages. Generally speaking, the court should instruct the jury as to the proper measure of damages and the elements to be considered in fixing them. The jury cannot be left to find any damages to which they think the plaintiff may be entitled. If

this were so, juries would become judges of the law as well as facts.''

The jury there was without a guide as to how the damages should be measured, and the result of such a proceeding brought forth the remarks quoted, and, while they were written without the reasons for them being given, yet, because of the provisions of our statute and the holding of the courts as disclosed by an investigation of the authorities, we are convinced that the view therein expressed is correct. Our conclusion is in agreement with the rule prevailing in many jurisdictions; yet a different procedure is followed in a number of others. Some of the states have statutes which settle the proposition, but most of them have not. In an early case in Iowa, *Owen* v. *Owen,* 22 Iowa, 270, which has been followed since, the court used this language:

''It may be said that the counsel did not request instructions, and that therefore it was not obligatory on the court to give any. Such a view does not accord with our conception of the functions and duty of the judge. He should see that every case goes to the jury so that they have clear and intelligent notions of precisely what it is that they are to decide. His charge is their chart and compass.''

In the case of *Southern Ry. Co.* v. *O'Bryan,* 112 Ga. 127, 37 S. E. 161, the Supreme Court of Georgia says:

''In an action against a railroad company, where several different elements of damage are claimed, it is error requiring the granting of a new trial for the judge to fail, in his charge to the jury, to give them any rule for estimating the damages claimed; and this is true notwithstanding there was no written request made by the defendant for such charge.''

In *Wilkinson* v. *Northeast Borough,* 215 Pa. 486, 64 Atl. 734, the Supreme Court of Pennsylvania uses this language:

"In every case of negligence it is the duty of the court of its own motion to instruct the jury as to the proper measure of damages. Without such instruction a jury has no legal guide for intelligent consideration and correct conclusion."

In *Mustang Reservoir Canal & Land Co.* v. *Hissman,* 49 Colo. 308, 112 Pac. 800, the Supreme Court of Colorado says:

"The rules by which damages are to be estimated should be laid down by the court, and it is its duty to explain to the jury the basis on which the assessment should be made, the proper elements of the damages involved, and within what limits they may be estimated in the case involved. . . . This is a rule of general practice. The court, on its own motion, should have instructed on this point, which it omitted to do."

In the case of *Baltimore & Ohio Ry. Co.* v. *Carr,* 71 Md. 135, 17 Atl. 1052, the Supreme Court of Maryland uses this language:

"Indeed, it is of the utmost importance that juries should be explicitly instructed as to the rules by which they are to be governed in estimating damages; for, as it was justly observed by the court in *Hadley* v. *Bazendale, supra,* 'If the jury are left without definite rule to guide them, it will, in most cases, manifestly lead to the greatest injustice.' "

See, also, *Huntington Contract Co.* v. *Bush* (1918), 179 Ky. 433, 200 S. W. 618; *Schwaninger* v. *McNeeley & Co.,* 44 Wash. 447, 87 Pac. 514; *Weil et al.* v. *Hagan,* 161 Ky. 292, 170 S. W. 618; *Camp* v. *Wabash Ry. Co.,* 94 Mo. App. 272, 68 S. W. 96; *Ft. Smith & W. R. Co.* v. *Green,* 56 Okl. 585, 156 Pac. 349; *Barton* v. *Gray,* 57 Mich. 622, 24 N. W. 638; *Wilson* v. *Commercial Union Ins. Co.,* 15 S. D. 322, 89 N. W. 649.

Appellee contends, and correctly so, that whether instructions should be given upon the court's own motion depends upon the rule prevailing in the par-

ticular jurisdiction as to the necessity of the court's giving instructions in the absence of a request. He claims further that the rule in this jurisdiction was established by this court in *Phoenix Ry. Co.* v. *Landis,* 13 Ariz. 279, 112 Pac. 844, in the following language:

"If appellant desired that the court instruct with greater particularity as to what habits should be considered, it should have presented to the court and requested the giving of instructions fully covering the subject in accordance with its view of the law. Having failed so to do, it is not now entitled to complain of the omission. This, we think, is the generally accepted view."

A correct instruction regarding the habits of the plaintiff had been given, and the only complaint was that it should have been given with greater particularity, but the court refused to uphold this contention, as it did also in the case of *Weatherford* v. *Hanger,* 16 Ariz. 427, 146 Pac. 759, in which complaint was made of the brevity of a correct instruction. The holding in both cases was right, but it does not establish the rule contended for by appellee, for in each instance the instruction was correct as far as it went, and there was no request for a fuller one. Under such circumstances the rule is as stated by this court in *Durazo* v. *Ayers,* 21 Ariz. 373, 188 Pac. 868, in the following language:

"While our statute makes it the duty of the court to charge the jury (paragraph 514, Civ. Code), it also gives to either party the right to present 'such instructions as he desires to have given to the jury' (paragraph 516, Civ. Code). We think a fair construction of these provisions should require a party, where the instructions given by the court fail to cover all issues or phases of the case, to request further instructions on the omitted features before he could assign such omission as error. This seems to be the generally adopted rule by the courts."

The case of *Wooley* v. *Locarnini*, 18 Ariz. 539, 164 Pac. 319, relied on by appellee, is not in point, because the court there had given a correct instruction under the pleadings on the question of damages. The jury did not follow it, but measured the damage by a rule insisted upon by the appellant which was just and equitable to both sides, and the court held that appellant was therefore uninjured.

We are clearly of the opinion that it was error to fail to charge the jury on the measure of damage irrespective of the fact that no request for such an instruction was made by either party, and the same would be true of any vital issue made by the pleadings and contested in the evidence.

The judgment is reversed and case remanded for a new trial.

ROSS, C. J., and BAKER, J., concur.